Van Doren v. Robinson et al.

FERDINAND VAN DOREN *vs.* JAMES F. ROBINSON and others.

1. *Cestui que trusts* are not, it seems, necessary parties to suits against trustees, to compel the specific performance of contracts, except where some question arises touching the power of the trustees to execute the contract, or their authority to act under it.

2. But where a bill in equity involves the title of the *cestui que trusts* to the property in dispute, or where they are interested, not only in the fund or estate respecting which the question at issue has arisen, but also in that question itself, they are necessary parties.

3. An objection for want of proper parties taken at the hearing will not prevail, unless such parties are necessary to the final determination of the cause.

4. The general principle is, that where the contract is incapable of being enforced against one party, that party is equally incapable of enforcing it against the other. But the principle does not apply where the contract, by its terms, gives to one party a right to the performance, which it does not give to the other.

5. Where the obligation to perform rests upon one of the parties only, equity will enforce the contract with great caution.

6. An agreement for the sale of land at a price *to be ascertained by the parties*, is too incomplete and uncertain to be carried into execution by a court of equity. But where the contract is, that land shall be conveyed " at a fair price," or " at a fair valuation," the court will direct the valuation to be made by a master, and will enforce the execution of the contract.

7. The true principle seems to be, that whenever the price to be paid can be ascertained in consistency with the terms of the contract, performance will be enforced. But the court will not make a contract for the parties, nor adopt a mode of ascertaining the price not in accordance with the spirit of the agreement.

8. A mere personal contract, not running with the land, nor binding the alienee at law, will be enforced against the alienee in equity, only where he is chargeable with notice of the contract.

9. Where the defendant claims title through a deed which contains the

covenant sought to be enforced, he is chargeable with constructive notice of the covenant.

10. Notice of a deed is notice of its contents, and where a purchaser cannot make out a title but by a deed which leads him to another fact, he will be deemed to have knowledge of that fact.

11. Constructive notice is knowledge imputed on presumption, too strong to be rebutted, that the knowledge must have been communicated.

12. Where the covenantee in a contract for the conveyance of land, permits a purchaser to acquire title, take possession of the premises, and pay the purchase money without an intimation of his claim under the covenant, or of his willingness to accept the title, he has no claim to relief in equity.

13. Specific performance is relief which equity will not give, unless in cases where the parties seeking it, come as promptly as the nature of the case will permit.

*Vanatta,* for complainant.

*Pitney,* for J. F. Robinson.

*T. Little,* for the other defendants.

THE CHANCELLOR. The complainant, by deed bearing date on the eighth of April, 1843, conveyed to Phebe Woodward, a tract of land in the county of Somerset, containing about fifty acres. The deed is executed under the hand and seal, both of the grantor and grantee, and contains the following covenant on the part of the grantee : " Whenever she, the said Phebe Woodward, shall quit the actual occupation of the foregoing described land and premises, she will reconvey the same to the said Ferdinand Van Doren in fee simple, by a good and sufficient deed of warranty, free and clear of all encumbrances made or suffered by her, for a fair price, provided said Ferdinand Van Doren will accept such conveyance and pay such price; and in case the said Phebe Woodward shall die in possession of the said land and premises, she hereby further covenants with said Ferdinand Van Doren, that her heirs or assigns shall, upon her death, reconvey said land and premises to him by such deed, and

Y *

upon such terms and conditions as last aforesaid, provided he or they will accept such deed, and pay such price for said land and premises." The grantee entered into possession of the premises, and continued in the actual occupation until the spring of 1845, when she removed to the city of New York, having leased the premises to a tenant for one year. On the twenty-first of October, 1845, Phebe Woodward, by deed of bargain and sale, conveyed the premises in fee to James F. Robinson, one of the defendants. On the fifteenth of February, 1847, James F. Robinson conveyed the premises in fee to John H. Robinson, who thereupon executed a deed of trust in favor of his mother, Nancy Robinson, by whom the consideration money for the conveyance of the farm by Phebe Woodward, was advanced. Both Phebe Woodward, the complainant's grantee, and Nancy Robinson, in whom the equitable estate in the premises was vested, died in the year 1849. The complainant's bill was filed on the seventeenth of April, 1862.

A preliminary objection is raised to the bill, for want of proper parties. *Cestui que trusts* are not, it seems, according to the modern rule in England, necessary parties to suits against trustees to compel the specific performance of contracts, except where some question arises touching the power of the trustees to execute the contract, or their authority to act under it. *Evans* v. *Jackson,* 8 *Sim.* 217; *Sanders* v. *Richards,* 2 *Collyer* 568; *Fry on Spec. Perf.,* § 99.

But the bill in this case is not a mere bill for specific performance. It is also in the nature of a bill of interpleader, and involves the title of the *cestui que trusts* to the property in dispute. It is in respect to that title, that the defendants are called upon to interplead, and the court is asked to decide. The *cestui que trusts* are interested not only in the fund or estate respecting which the question at issue has arisen, but also in that question itself. In such case, the *cestui que trusts* are necessary parties. *Calvert on Parties* 5.

The devisees of the land in question under the will of Nancy Robinson, if that will should be established, as the

bill assumes that it may be, would have an interest in the event of the suit.

If, therefore, that question should be decided, it would become necessary to make the *cestui que trusts* parties, before the final determination of the cause.

But as the case will be disposed of upon other grounds, totally irrespective of the title to the property, or the rights of the *cestui que trusts*, it cannot now with any propriety be declared that the bill is defective for want of parties. The objection was not raised by demurrer. An objection for want of proper parties taken at the hearing will not prevail, unless such parties are necessary to the final determination of the cause.

It is objected that the contract is not such as equity will enforce for want of mutuality. The general principle is, that where the contract is incapable of being enforced against one party, that party is equally incapable of enforcing it against the other. *Fry on Spec. Perf.,* § 286.

But the principle does not apply where the contract, by its terms, gives to one party a right to the performance which it does not give to the other, as where a lease contains a covenant on the part of the lessor for a renewal of the lease at the expiration of the term. It is now settled that such covenant may be enforced against the lessor, though there is no reciprocal obligation on the part of the lessee to accept the renewal. *Fry on Spec. Perf.,* § 948.

In *McKibbin* v. *Brown,* 1 *McCarter* 13, the bill was filed by the lessee to enforce the specific performance of a covenant for renewal. The bill was open to the objection now urged, but it was not suggested as a ground of defence, although the case was warmly contested, both in this court and in the Court of Appeals.

The present case falls directly within the same principle. The grantee in the deed covenanted to reconvey whenever she should quit the actual occupation of the premises, though the grantor was under no obligation to accept the title. It is in fact a contract in which the obligation to perform rests

upon one of the parties, and which will be enforced in equity, though with great caution. *Chesterman* v. *Mann,* 9 *Hare* 206 ; *Allen* v. *Hilton,* 1 *Fonb. Eq.* 425, *note; Fry on Spec. Perf.,* § 291–2, § 733.

It is further objected that the contract will not be enforced, because the price to be paid for the reconveyance of the land is not ascertained by the contract. The agreement is that the land shall be reconveyed for a *fair price,* if the grantor will accept the deed and pay such price.

It is urged that the effect of the agreement is simply to give to the vendor the refusal of the property, if the parties could agree upon the price. If such be the effect of the contract, the court will not decree a specific performance. An agreement for the sale of land, at a price to be ascertained by the parties, is too incomplete and uncertain to be carried into execution by a court of equity. *Graham* v. *Call,* 5 *Munf.* 396.

But where the contract is that the land shall be reconveyed, not at a price to be agreed upon by the parties, but at a fair price, or at a fair valuation, the court will direct the valuation to be made by a master, and will enforce the execution of the contract. *Gaskarth* v. *Lord Lowther,* 12 *Ves.* 107 ; *Wilks* v. *Davis,* 3 *Mer.* 507 ; *City of Providence* v. *St. John's Lodge,* 2 *Rhode Island R.* 46 ; *Dike* v. *Greene,* 4 *Rhode Island R.* 285 ; *Fry on Spec. Perf.,* § 219.

This class of cases has given rise to some conflict of opinion, and the line which marks the limits of the court's exercise of jurisdiction, is not clearly defined. The true principle seems to be, that whenever the price to be paid can be ascertained, in consistency with the terms of the contract, performance will be enforced. But the court will not make a contract for the parties, nor adopt a mode of ascertaining the price, not in accordance with the real spirit of the agreement. In this case, the *mode* in which the price shall be fixed, is not designated in the contract. It is required simply that it be a fair price. To ascertain that value, by any mode of investigation, will conflict neither with the letter, nor with the

spirit of the contract. I think, therefore, the contract is such as will justify a decree for specific performance.

The covenant for reconveyance is sought to be enforced, not against the covenantor, but against the alienee of the land. The covenant is merely personal. It neither runs with the land, nor binds the alienee at law. It will be enforced against the alienee, in equity, only where he is chargeable with notice of the original contract. *Jackson's case,* 5 *Vin. Ab.* 543, § 3; *Taylor* v. *Stibbert,* 2 *Vesey* 437; *Fry on Spec. Perf.,* § 135, § 137.

There is no proof of actual notice to the alienee. At the time of the conveyance from Phebe Woodward, the covenantor, to James F. Robinson, the deed from the complainant to Phebe Woodward was not on record. There is no evidence that Robinson had ever seen that deed before he received the title. He denies that he ever saw it, or that he had any knowledge whatever of the existence of the covenant, at the time of the conveyance to him. He is, nevertheless, chargeable with constructive notice. All the defendants claim title through the deed from the complainant to Phebe Woodward, which contains the covenant which is sought to be enforced. Notice of a deed is notice of its contents. And where a purchaser cannot make out a title but by a deed, which leads him to another fact, he will be deemed to have knowledge of that fact. 4 *Kent's Com.* 179; 2 *Sugden on Vendors* (7th Am. ed.) 559, § 63; 1 *Story's Eq.,* § 400.

In this aspect it is immaterial whether the deed was or was not recorded.

It avails nothing that the defendants deny actual notice. Constructive notice is knowledge imputed on presumption, too strong to be rebutted, that the knowledge must have been communicated. 1 *Story's Eq. Jur.,* § 399; 2 *Sugden on Vendors* 1041, § 7.

It is further objected that, admitting the defendants to be chargeable with notice, the complainant is not entitled to relief, on the ground that his conduct at the time of the sale

and conveyance to James F. Robinson, was calculated to mislead him in regard to his rights as a purchaser.

By the terms of the covenant, Phebe Woodward engaged to reconvey the premises to the complainant whenever she should quit the actual occupation of the land and premises, provided the complainant would accept the conveyance and pay the price. In the spring of 1845 she left the premises and removed to the city of New York. About the first of October following, Robinson called upon the complainant and viewed the premises, with the intention of purchasing. It is obvious, from the evidence not only of Robinson but of the complainant himself, that he was aware of Mrs. Woodward's desire to sell, and of Robinson's intention to purchase. He says, that from what he understood from Robinson, he had reason to believe that she would sell without his consent. He gave Robinson no intimation of his intention or willingness to accept a reconveyance. Immediately thereafter, he had an interview with Mrs. Woodward, in the city of New York. He made no demand of a conveyance; gave no intimation that he was willing to accept it. The object of his visit was not to protect his rights under the covenant, but to obtain from Mrs. Woodward the payment of a debt which she owed him. On his return from New York, without having obtained security for his debt, he sued out a writ of attachment against Mrs. Woodward, as a non-resident debtor, which he caused to be served upon the land in question, before the deed to Robinson was executed. Robinson, having obtained his title, entered into possession, and while so in possession, he paid and satisfied to the auditors in attachment, with the knowledge and concurrence of the complainant, the debt for which the attachment was issued, together with the claims of other attaching creditors, which had become encumbrances on the land. The complainant not only tacitly assented to the sale and conveyance by Woodward to Robinson, but he actively participated, by receiving a part of the purchase money.

By the terms of the contract, he was as much bound to

demand a deed, or intimate his willingness to accept it, as the covenantor was to reconvey. No deed could be tendered till the price was agreed upon. The obligation to convey was inoperative, unless he was willing to accept the deed and pay the purchase money. Yet he stood by and permitted the purchaser to acquire title, to take possession of the premises and to pay the purchase money, without an intimation of his claim under the covenant, or of his willingness to accept the title if it was tendered to him. Such conduct would estop a party from enforcing a legal title ; with more reason it operates to deprive a party of all claim to relief at the hands of this court. The conduct of the complainant operated as a waiver of his equitable claim under the covenant, as against James F. Robinson and those claiming under him.

An equally decisive objection to the relief asked for, is the delay on the part of the complainant in seeking to enforce his claim. Robinson acquired title, and entered into possession of the premises in October, 1845. The complainant's bill was filed in April, 1862, more than sixteen years after the date of the conveyance. His first formal notice of his claim to one of the defendants, was made on the twenty-first of March, 1861. There is strong presumptive evidence in the case, that until about that period, he had no intention or desire to enforce his claim to a conveyance under the stipulations of the covenant. This great delay, unaccounted for, is a bar to a claim for a specific performance of the contract. A party, in the language of Lord Alvanley, " cannot call upon a court of equity for specific performance, unless he has shown himself ready, desirous, prompt, and eager." *Melward* v. *Earl of Thanet,* 5 *Vesey* 720, *note b.*

In the language of Lord Cranworth, " specific performance is relief which this court will not give, unless in cases where the parties seeking it, come as promptly as the nature of the case will permit." *Eads* v. *Williams,* 4 *De Gex, M. & G.* 691 ; *Fry on Spec. Perf.,* § 732–3.

A bill for specific performance is an application to the discretion, or rather to the extraordinary jurisdiction of equity,

which cannot be exercised in favor of persons who have long slept upon their rights, and acquiesced in a title and possession adverse to their claim. 1 *Sugden on Vendors* 289, § 3, 4, 5.

No excuse is furnished by the facts set out in the bill as explanatory of the delay. Phebe Woodward did not die till 1849, more than three years after Robinson had acquired title and possession of the premises under her. The subsequent controversy in Vermont, touching the validity of the will of Nancy Robinson, and the conflicting claims of the defendants to the premises, presented no obstacle to the complainant's suit. The decision of the question in Vermont did not, as the complainant himself alleges, conclusively settle the question of title. The same difficulty as to the title, which is alleged as a ground for the delay, continued to exist when the bill was filed.

Nor is the objection on the score of delay waived by the fact, that negotiations for a conveyance were had between the parties, on the assumption of the complainant's claim to a reconveyance. There was no admission by the defendants of the complainant's right to the conveyance under the covenant, nor any waiver, express or implied, of any defence to such claim. The negotiations for the purchase were in fact commenced, and the price agreed upon, before the complainant's claim to a conveyance was presented or insisted on. It is evident, indeed, from the whole tenor of the evidence, and especially from the written correspondence between the parties, that the complainant's claim was not set up, and that the bill was not filed, so much for the purpose of enforcing a compliance with the covenant, as for the sake of acquiring a satisfactory title, and ascertaining to which of the defendants the purchase money should be paid. The defendants were willing to convey. The parties had virtually agreed upon the price. The only question was, to which of the defendants the purchase money should be paid. The bill was evidently filed under an impression on the part of the solicitor, that the bill would not be resisted, but that the defendants

would acquiesce in a determination by this court of their conflicting claims. That expectation proves not to have been well founded.

The bill must be dismissed.