PETER CONOVER and LUCIUS HART *vs.* FRANKLIN SMITH and others.

1. A lessee having made permanent improvements upon the demised premises under a covenant that he shall be repaid their appraised value at the expiration of the term, may seek relief in equity as well as at law. The value of the improvements constitutes an equitable lien upon the premises, which alone entitles the party to relief in equity.

2 If the lessee covenant for him and his *assigns*, that they will make a new wall upon a part of the thing demised, it shall bind the assignee. But if the thing to be done, be merely collateral to the land, and doth not touch or concern the thing demised in any sort, the assignee shall not be charged, though he be named in the covenant. The covenant is a mere personal covenant not affecting the land demised.

3. A covenant by the lessor to pay his lessee the value of machinery, fixtures, and other necessary improvements, authorized to be substituted in the place of those already in the buildings at the time of the lease, enures to the benefit of the assignee of the lessee, though the word "assigns" be omitted. Such improvements constitute an equitable lien upon the premises which can be enforced only in this court.

---

The bill states that by an agreement under seal, bearing date on the 28th of June, 1853, between Miles C. Smith and others of the one part, and Andrew Snowhill and John Priestley of the other part, the parties of the first part demised to the parties of the second part, certain lots of land, mills, buildings, and water power at New Brunswick, for the term of ten years, from the first day of May, 1853, for the yearly rent of $1200, payable quarterly. And it was among other things, in and by the said agreement, covenanted and agreed between the said parties, that the lessees might enter at once upon the said premises, and remove all the machinery in said mills not adapted for the business of manufacturing paper, and to substitute in the place of the machinery so removed, such other machinery and fixtures as might be necessary or proper for carrying on their contemplated business ; that at the expiration of the lease on the first of May, 1863, the lessees should peaceably yield up the possession of the said premises ; and if the parties to the agreement, or those who might then legally represent them, could not agree upon the value of the machinery, fixtures, and other necessary improvements made and substituted by the lessees in the stead of the existing machinery in said mills, each party should choose an arbitrator, which arbitrators, (or if they could not agree, they with an umpire by them to be chosen), should make an appraisement and valuation of all the substituted machinery, fixtures, and improvements made by the

lessees, and upon the payment of the amount of such valuation and appraisement, the machinery, fixtures, and improvements so appraised, should become the property of the lessors or their legal representatives. The lessees entered into possession, and substituted other machinery and fixtures, and made improvements at a large cost, which still remain in said mills, and have greatly enhanced the value thereof. The complainants claim, by assignment and transfer, to be invested with all the rights of the original lessees. The interest of Miles Smith, one of the lessors in the demised premises, has been conveyed, by sale under judgment and execution at law, to Reve A. DeRussy, and the reversionary interest of the lessors has been, and is largely encumbered by mortgages and judgments. The machinery, fixtures, and improvements substituted and made by the lessees have also been heavily encumbered by mortgages.

The bill further states that the complainants who claim to be invested with the rights of the original lessees, being unable, upon the expiration of the term, to agree with the lessors and with DeRussy, in regard to the value of the machinery, fixtures, and improvements substituted and made, as aforesaid, in and upon the demised premises, selected an arbitrator on their part, in pursuance of the terms of the lease, and gave notice thereof to the lessors, but that no arbitrator has been nominated by them.

The bill prays that the premises may be decreed to be subject to an equitable lien for the value of the machinery, fixtures, and improvements substituted in the stead of the machinery in the mills at the date of the lease ; that the true value thereof may be ascertained under the direction of the court; that the premises may be sold under the order of the court, and the proceeds of the sale apportioned among the parties interested according to equity ; and that the owners may be restrained from conveying the premises, or removing the fixtures or machinery, or wasting the same, and from bringing suit at law for rent or other compensation for the rent of said premises since the expiration of the lease.

E *

Several of the defendants have answered. The case is now brought on for hearing upon the bill and the answer of DeRussy and wife, two of the defendants, for the disposition of certain questions raised by the answer.

*Mr. C. Parker*, for complainants.

*Mr. R. Adrain*, for defendants.

THE CHANCELLOR. It is objected that there is no equity in the complainants' bill to entitle them to the relief prayed for. It is not denied that a lessee, having made permanent improvements upon the demised premises, under a covenant that he shall be repaid their appraised value at the expiration of the term, may seek relief in equity as well as at law. It is clear that he may. *Copper* v. *Wells, Saxton* 10; *Berry* v. *Ex'rs of Van Winkle*, 1 *Green's Ch. R.* 269. The value of the improvements constitutes an equitable lien upon the premises, which alone entitles the party to relief in equity. Other grounds of equitable relief may supervene. An appraisement pursuant to the terms of the covenant may have been rendered impracticable, or, as in this case, there may be conflicting questions of law and equity touching the rights and interests of lessors and lessees, their assignees or creditors, which renders relief at law inadequate or ineffectual.

But the objection is that though the *lessee* be entitled to relief, yet under the terms of the lease in this case, the *assignee* can maintain no action either at law or in equity for the value of the improvements. The lease itself is in the usual form to the lessees, their executors, administrators, and *assigns:* But the permission to remove the machinery then upon the premises, and substitute other machinery and fixtures, is given to the lessees, without mentioning their *assigns*. And so the covenant to pay the value of the machinery and fixtures at the end of the term, is in terms a mutual agreement between the parties to the lease and in favor of the legal representatives of the lessees, but not of their assigns.

Upon a covenant which runs with the land, an action lies for or against the assignee at the common law, although the assignees be not named in the covenant. It was resolved in Spencer's case, 3 *Coke's Rep.* 16, when the covenant extends to a thing *in esse*, parcel of the demise, the thing to be done by force of the covenant is *quodammodo* annexed and appurtenant to the thing demised, and shall go with the land and bind the assignee, although he be not bound by express words. But when the covenant extends to a thing not in being at the time of the demise made, it cannot be appurtenant or annexed to the thing which hath no being; as if the lessee covenants to repair the houses demised to him during the term, that is parcel of the contract and extends to the support of the thing demised, and therefore is *quodammodo* annexed, appurtenant to the houses, and shall bind the assignee, although he be not bound expressly by the covenant. But if the covenant concerns a thing not *in esse* at the time of the demise made, but to be built after, as to build a house or wall, this shall not bind the assignee, if not named, for the law will not annex the covenant to a thing which hath no being.

If the lessee covenant for him and his assigns, that they will make a new wall upon a part of the thing demised, it shall bind the assignee. But if the thing to be done be merely collateral to the land, and doth not touch or concern the thing demised in any sort, then the assignee shall not be charged, though he be named in the covenant. The covenant is a mere personal covenant, not affecting the land demised. *Spencer's Case*, 3 *Coke's R.* 16, *Res.* 1 *and* 2; 1 *Smith's Leading Cases* 22; *Lametti* v. *Anderson*, 6 *Cowen* 302; *Thompson* v. *Rose*, 8 *Cowen* 266; *Tallman* v. *Coffin*, 4 *Comst.* 134; *Taylor's Land. & Tenant*, § 260.

In *Bally* v. *Wells*, 3 *Wilson* 25, after a statement of the resolutions in Spencer's case, the principle is thus stated by the court: "There must always be a privity between the plaintiff and defendant, to make the defendant liable to an action of covenant. The covenant must respect the thing

granted or demised. When the thing to be done, or omitted to be done, concerns the lands or estate, that is the medium which creates the privity between the plaintiff and defendant. As if lessee for life covenants for him, his executors and administrators, to build a wall within his term, and afterwards he assigns over his estate, the grantee of the reversion shall have covenant against the assignees, and notwithstanding the covenant wants the word assigns. Yet every assignee by accepting the possession, hath made himself subject to all covenants concerning the land, but not to collateral covenants; and covenants of repairs and building walls or houses, are covenants inherent to the land, with which the assignee, without the special words, shall be charged."

This is a very clear and intelligible statement of the legal principle, and varies from the resolutions in Spencer's case in this, that it makes no distinction in the effect of the covenant, whether it relate to the repairs of an existing building or to the erection of a new one, provided it be upon the demised premises, the land or estate being the medium which creates the privity between the plaintiff and defendant. So that the assignee of the lessee is bound by the covenant, whether it relate to the erection of a new building or the repairs of an old one. It is worthy of notice that the opinion of the court, both in the statement of the resolution in Spencer's case and in the subsequent enunciation of the principle growing out of it, disregards the distinction between the erection and repairs of a building. And the opinion is entitled to the more consideration, as it emanates from a court over which Chief Justice Wilmot presided, and is preserved in a volume of reports, which is justly characterized as a very accurate repository of judicial decisions.

If this be a true statement of the principle, the covenant of the lessor in this case to pay for the improvements, clearly enures to the benefit of the assignee. For, if the assignee was authorized or bound by the terms of the covenant to change the machinery, the covenant to pay for it must enure

to his benefit. But, adopting the statement of the principle as contained in Spencer's case, to be the true one, the question still remains—is not the covenant in this case within the principle extending the operation of the covenant to the assignee, though not named? The covenant respects not the erection of new buildings, but alterations and improvements in existing buildings; a change of one set of machinery and fixtures for another in the buildings demised. In the language of the resolution in Spencer's case, it extends to the support of the thing demised, and therefore is *quodammodo* annexed, appurtenant to the buildings.

If it be objected that the machinery to be paid for is new, and formed no part of the demised premises at the time of the demise, it may be answered that the materials and labor which constitute the repairs, formed no part of the demised premises at the time of the demise, but that the covenant in the one case, as well as in the other, concerns the thing demised, and is not collateral to it.

It seems to me, therefore, that this covenant extends to the assignee, though he is not expressly named in the contract, and that an action at law as well as in equity may be maintained by the assignee to enforce it.

But if it be conceded that by the strict rules of the common law the covenant does not affect the assignee, and that no action at law could be maintained upon it in his name, it does not follow that he is without relief in equity. It is admitted that the machinery and fixtures were not substituted by the lessees themselves, but by the assignees. The machinery in the mills at the time of the demise was removed, sold, and the price paid to the lessors, and the new machinery was substituted, and improvements made, as provided in the contract. The complainants are now before the court asking compensation for valuable improvements made upon the demised premises during the continuance of the term, with the knowledge and consent of the lessors. These improvements constitute an equitable lien upon the premises which can be enforced only in this court. It was upon this ground that

relief was granted in the cases of *Copper* v. *Wells,* and *Berry* v. *Ex'rs of Van Winkle,* already referred to. The design of the complainants' bill is to enforce this lien, and to secure to the complainants the value of the substituted machinery and fixtures at the expiration of the term.

In this aspect of the case it does not seem to be material whether the assignees, at the expiration of the lease, unlawfully refused to surrender the premises, or whether they were then in a situation to transfer the property clear of encumbrance, or whether, from this or any other cause, the defendants were not bound to join in the appointment of arbitrators. If the complainants were asking the appointment of an arbitrator, with a view to the specific performance of the contract, a different question would be presented. It is clear that the court would not, under the circumstances, appoint an arbitrator, or enforce the specific performance of the contract. *Copper* v. *Wells, Saxton* 14; *McKibbin* v. *Brown,* 1 *McCarter* 13.

Whatever effect the unlawful refusal of the complainants to surrender possession, or their inability to transfer the substituted machinery to the defendants, may have upon their rights or interests, they constitute no obstacle to the complainants' suit, nor do they affect the equity of the bill.

The lessees are authorized by the terms of the contract to remove the machinery from the mills upon the premises at the date of the demise, and to substitute in the place thereof, such other machinery and fixtures as might be necessary or proper for carrying on their contemplated business. Whether the brick building claimed to have been erected upon the premises is within the contract, or constitutes a matter for compensation, will depend upon the character of the building, and the use to which it was applied, and this will form a proper subject of inquiry before the master.