MARY FAHY

v.

PATRICK CAVANAGH.

[Submitted July 24th, 1899.   Decided August 28th, 1899.   Filed March 24th, 1900.]

A defendant will not be compelled to specifically perform a contract to pur-chase land where a material fact constituting an indispensable link in the complainant's chain of title depends for its proof entirely and exclusively upon the evidence of two certain witnesses.

On final hearing on bill, answer and proofs.

The bill is filed by Mary Fahy to enforce the specific per-formance of a contract made by her with the defendant, Patrick Cavanagh, for the conveyance by complainant to defendant of a house and lot in the city of Jersey City. The making of the contract is admitted by the answer, which sets up as the only defence the failure of the complainant to manifest a merchantable title in herself.

The complainant is the widow of one Charles H. Fahy, who died seized of the premises in question on the 30th of January, 1895, leaving the complainant, his widow, and four infant children, and having a few hours before his death executed a testamentary paper upon which the complainant relies to make out title in herself. This paper is in the words and figures fol-lowing, adding the actual date and omitting certain erasures and interlineations which are not necessary for the understanding of the case:

"JERSEY CITY 29 [January] 1895.

"I, In the name of God, I Chas. H. Fahy 763 Newark Ave. J City N. Jersey Make my last will and testament that I leave all my Real Estate to my wife Mary C. Fahy and I also advise her that my mother should be taken care of the remainder of her life. that Mary C. Fahy my wife is at Leberty to sell this property 48 hour after my death if she gets a Good price for it to sell it when she should sell it, Request to his mother Mary Fahy she gets $500.00

Fahy v. Cavanagh.

I Request to my Brother Thomas Fahy all his personal clothing with the exception my watch and chain that I Request to my 4 Little children that she can Raffel it if she git a fair price for it. I here Request that if Mary C. Fahy shculd get married again she is only intitle to a child part in case his mother Mary Fahy should die she turn over $300.00 to his children.

    " Excetoras of the will

        " VALENTINE BURKE
        " CORNELIUS McCUE

                    " CHARLES H. FAHY."

This paper was presented to the surrogate of Hudson county for probate early in the year 1898, and the surrogate referred it to the orphans court, and the learned judge of that court, after citations duly issued and served and the examination of witnesses in open court, held, on the 27th of May, 1898, that the paper was entitled to probate as the last will and testament of Charles H. Fahy; and thereafter, on the 25th of July, the two persons whose names are signed to the document, namely, Valentine Burke and Cornelius McCue, each made a separate affidavit, which is annexed to the will, in the usual form, that he saw the testator (Fahy) sign the annexed writing, heard him publish and declare the same as and for his last will and testament, and that he and the other subscribing witness were present at the signing and publication thereof, and that they subscribed their names thereto as witnesses in the presence of the testator and of each other, and at the request of testator.

The original paper was produced before this court on the hearing, and the two persons named—Valentine Burke and Cornelius McCue—were severally sworn as witnesses. Their testimony is to the effect that McCue, who is a single man, was in friendly attendance upon Fahy, as a sort of nurse, in his last illness, and that Fahy, being conscious that he was near his end, sent by his wife or some other person for Burke, who was a neighbor, to come to see him; that writing materials were provided, and that Burke, by the side of the bed of the testator, and in the immediate presence of McCue, wrote the document at the immediate dictation of the testator down to the word "excetoras;" that he handed it to the testator, who read it over aloud, said it was all right, then directed Burke and McCue to

sign it as executors, which they did, immediately after which he himself signed his name, " Charles H. Fahy," the whole constituting one transaction, and the actual writing being done in the order of time as it appears upon the document. Neither witness stated that the word " witnesses " was used, or that any explanation was made to them as to why the testator requested the word " excetoras " to be written instead of " witnesses."

*Mr. John A. Dennin*, for the complainant.

*Mr. John S. Garrick*, for the defendant.

PITNEY, V. C.

Two questions were raised upon the argument and are presented for consideration and decision—*first*, as to whether the testamentary writing was properly executed by the testator so as to pass real estate in New Jersey; and *second*, whether or not, upon its true construction, the complainant has power to make a valid conveyance of the premises.

So far as regards personal property, if any, left by the testator, the decision of the orphans court is conclusive as against the next of kin. But that decision does not affect the title to land as against the heir-at-law until seven years after its probate in the orphans court, and if the heir-at-law is an infant, until seven years after he has arrived at maturity. So that, for present purposes, the probate in the orphans court is of no value. Of course, however, it is to be inferred that the learned judge of that court decided two matters—*first*, that while the testator directed the use of the word " excetoras " he intended to use the word " witnesses ; " and *second*, the fact that the signatures of the witnesses precede upon the paper in place and also in time that of the testator is not fatal to the proper execution of the will.

If it were proper and necessary, in the present situation of affairs, for me to determine those questions, the inclination of my mind would be to agree with that of the learned judge. Chancellor Green, in *Mundy* v. *Mundy*, *2 McCart. 290*, laid

down the rule that "the particular order of the several requisites to the valid execution of a testament is not at all material." That was said with respect to a case where there was no question but that the whole proceeding was one transaction. That opinion is supported by the supreme court of Connecticut in *O'Brien* v. *Gallagher, 25 Conn. 229 (1856)*, where the authorities up to that date are collected. Chief-Justice Waite, speaking for the other judges, uses this language: "The general and regular course undoubtedly is, for the testator, in the first place, to sign and execute the will on his part and then call upon the witnesses to attest the execution by subscribing their names. But where, as in the present case, witnesses are called to attest the execution of a will, and being informed what the instrument is, subscribe their names thereto as witnesses, and the testator, on his part and in their presence, duly executes the instrument as his will, and all is done at one and the same time and for the purpose of perfecting the instrument as a will, we cannot say that it is not legally executed merely because the names of the witnesses were subscribed before that of the testator."

To the same effect is what was said by Mr. Justice Woodward, speaking for the supreme court of Pennsylvania, in *Miller* v. *McNeill, 35 Pa. St. 217* (at *p. 222*), where he uses the following language: "Our statute contemplates, undoubtedly, a signature by the testator, and then a signing by witnesses in attestation of that signature, when witnesses subscribe at all; but where a transaction consists of several parts, all of which occur at the same moment and in the same presence, are we required to undo it because they did not occur in the orderly succession which the law contemplates? No language of our statute of wills imposes any such necessity upon us, and we would not decide anything so unreasonable, except under stress of very positive statutory language. The execution and attestation of the will were contemporaneous, or, rather, simultaneous acts, and we will not regard the question who held the pen first, the testator or his witnesses."

The contrary is held by the court of appeals of New York, reversing the supreme court, in *Jackson* v. *Jackson, 39 N. Y.*

*153,* the opinion being written by that distinguished jurist, Lewis B. Woodruff. And it is said by the compiler of the article on " Wills " (*29 Am. & Eng. Encycl. L. 209*) that the weight of American authority is in accordance with this decision of the court of appeals of New York, but on page 210 is found reference to a number of cases decided in other states, including those which I have above cited, in accordance with the rules laid down by Chancellor Green.

My impression is that the paper was properly executed as a will.

But that does not settle the case, for the simple reason that upon its face the paper does not appear to have been so executed, and it will be necessary in order to maintain title under it as against the heirs-at-law, whenever they shall see fit to bring the matter to a judicial test, to prove its due execution by the production of witnesses and the display of the facts before a court, and, it may be, a jury.  The two witnesses who alone are able to verify those facts may be dead, or beyond the reach of the process of the court, or have failed in memory.  None of the depositions already made—either those annexed to the will, or those taken *in extenso* in the orphans court or in this court— can be made use of against those heirs.  They were not parties by construction in the orphans court so far as real estate is concerned, and they are not and cannot be made parties to this suit in this court.  No suit can be maintained against them to quiet title which will be of any value until they have arrived at maturity.  It is possible, and perhaps probable, that a suit against those heirs to perpetuate the evidence, resulting in what is called the proof of the will in the court of chancery, might be properly instituted and maintained and the evidence in that way perpetuated ; but in no other way can the widow herself or her grantee be assured against a claim from either of the heirs-at-law, and I am not prepared to say that such proceeding will be efficient for that purpose.

Under these circumstances, ought this court to compel the defendant to take the title?  I think not.  It is well settled, and I think so settled upon sound principles, that in suits for the specific performance of contracts this court may compel a defend-

ant to take a title, the validity of which depends upon what may be properly described as a doubtful question of law, and may itself determine that question of law for the purpose of the particular case. No harm will be done to the defendant because, by an appeal to the court of errors and appeals, that court, which is at once a court of law and of equity, may finally determine the question of law, and settle it as against all the world, whether parties to the suit or not. *Lippincott* v. *Wikoff, 9 Dick. Ch. Rep. 107*, where the whole question is thoroughly discussed by Vice-Chancellor Emery. But if the title depends upon a question of fact which is not a matter of record, and cannot be so made, then the rule is equally well settled the other way, namely, that this court will not compel an unwilling purchaser to take the title. The vice-chancellor says (at *p. 114*): "In cases where the doubt in relation to title is one of fact, which the court is called on to consider, the general rule has been declared to be that the court will never compel a purchaser to take a title where the point on which it depends is too doubtful to be settled without litigation, or *where the purchase would expose him to the hazard of such proceedings;* " and cites a number of cases, which he correctly states " were cases in which the validity of the title depended on whether certain facts existed, and the court held that there was sufficient doubt *to put the purchaser in hazard of litigation* and he would not be compelled to take the title."

I think this case ranges itself under that class. An action of ejectment may be brought against the defendant by the heirs-at-law twenty years or more from now, and for the reasons already stated he might be entirely unable to establish the facts upon which his title depends. It would not, in my judgment, be equitable or just to compel him to accept that hazard.

This renders it unnecessary to determine the question as to whether, supposing the will to be established, the complainant has power under it to make a valid conveyance; but in saying this I do not wish to be understood as intimating that I have any doubt on that subject.

I think the bill must be dismissed, but, under the circumstances, without costs.