NATHAN WELITOFF, complainant-appellant,

*v.*

HENRY KOHL, defendant-respondent.

[Submitted February term, 1929.   Decided October 14th, 1929.]

182

[redacted]

*Messrs. Gross & Gross* (*Isaac Gross,* of counsel), for the appellant.

*Messrs. Edwards & Smith* (*Edwin M. Smith,* of counsel), for the respondent.

The opinion of the court was delivered by

WHITE, J.

The respondent, Kohl, in 1923, conveyed in fee-simple premises on Gifford avenue in Jersey City to one Jaffe, the deed (which was duly recorded) containing the following restrictive covenant, viz., "Subject also to the condition that no building shall be constructed or erected upon said premises or any part thereof nearer than fifteen feet to the building line of Gifford avenue." Jaffe gave Kohl a purchase-money mortgage for $60,000 which contained the same restriction. At the time of this conveyance the improvements fronting on Gifford avenue in this location were exclusively high-class private residences, all setting back fifteen feet from the street building line, but neither prior to nor since the imposition of the restriction in the Kohl conveyance above mentioned, were any such restrictions imposed on any of such adjoining and neighboring properties. At the time of the imposition of the restriction in the Kohl deed to Jaffe, Kohl did not own any property in the neighborhood which might be benefitted by an observance of the restrictive covenant nor does he now own any such other property, and the purchase-money mortgage above mentioned has been purchased from and assigned by him to a third party who has released the property in question from the restriction contained in such mortgage. Jaffe has since conveyed to Realty Security Cor-

poration and the latter to South Center Realty Company by deeds each containing the restriction, and the South Center Realty Company has conveyed to complainant, Welitoff, by deed omitting the restrictive language. High apartment houses have now been erected on Gifford avenue on lots adjoining the lot in question (one on each side of it) and extending to within nine feet of the Gifford avenue building line. Welitoff, desiring to likewise improve his lot, has applied to Kohl for a release of the restriction which Kohl has refused to give, asserting a right thereunder to prevent Welitoff's proposed improvement should he attempt to go forward with it. Welitoff is in peaceable possession of the property and no suit has been commenced to enforce the restriction. He, therefore, filed this bill to quiet his title as against said alleged restriction, praying the court to decree that the restriction has no binding effect upon his title to said premises and that such title is free, clear and discharged therefrom. The defendant-respondent, Kohl, by way of counter-claim, prayed an injunction restraining a breach of the covenant.

The facts are all admitted, but Kohl claims an alleged interest in the preservation of the restrictive force of the covenant in that it will secure to him a practical means of collecting an additional consideration for the original grant which he made to Jaffe. He says that at that time he must be presumed to have accepted a less consideration for the conveyance which he made reserving the restriction, than the consideration he might have received for a conveyance clear of restriction. He says this must be so because the courts have said that obviously a restricted property is less valuable than one which is unrestricted. Consequently, he says the difference between these two considerations is the measure of the damage he will, as he claims, be entitled to collect from Welitoff for breach of covenant should the latter violate the restriction in the manner proposed, and that pending such collection and as security therefor, the restriction should not be held invalid and ineffective.

The learned vice-chancellor in effect adopted this view and advised the decree appealed from, whereby the injunction

asked for by the counter-claim was denied and the relief prayed for in the bill of complaint, thereby declaring the restriction invalid and ineffective, was granted, but "upon condition that Kohl be reimbursed by Welitoff for so much [the amount to be ascertained by further proceedings in open court or upon a reference] as he may be able to prove he sacrificed by way of consideration through the imposing of such restrictive covenant upon said premises."

We think that the injunction asked by the counter-claim was properly denied and that the relief prayed for in the bill to quiet complainant's title was properly granted, but that it was error to impose the condition for so-called reimbursement.

The relief prayed for in the bill is exactly what the act (1909) prescribes under the circumstances here admitted to exist, but (even assuming that Kohl would have the right to recover substantial damages for a breach of the covenant when and if such breach should occur, which, for the reasons hereinafter pointed out, under the circumstances here existing, he would not) the imposition of the condition is wholly beyond the authority conferred by the act and would also seem to be equally beyond the jurisdiction of the court of chancery.

Section 1 of the act (*P. L. 1909 p. 233*) provides: "When any person is in peaceable possession of lands in this state, claiming to own the same in fee-simple under a deed of conveyance therefor * * * and in such deed there is no covenant, condition or agreement for the forfeiture and payment of sums of money or penalties on breach thereof, or restrictions, and it is claimed or asserted by anyone that said lands are subject to covenants, conditions or agreements for the forfeiture and payment of sums of money, or penalties on breach thereof, or restrictions, contained in earlier deeds in the chain of title, and no suit shall be pending to enforce or test the existence or validity of such covenants, conditions, agreements or restrictions, it shall be lawful for such person so in possession to bring and maintain a suit in the court of chancery to settle the existence and validity of such covenants, conditions, agreements or restrictions and to clear up all doubts and disputes touching and concerning the same," &c., and sec-

tion 6 provides that the final determination and decree in such suit shall fix and settle the rights of the parties with respect to the existence and validity of such covenants, conditions, agreements or restrictions. This latter section is obviously mandatory.

In obedience to this mandate the court of chancery fixed and settled the question of the existence and validity of this restriction by declaring it to be non-existent and without binding effect upon and as affecting the title to the land in question, and then, in disobedience to such mandate, and in seeming contradiction of such declaration, withheld the latter's effect until there should be assessed by the court of chancery and paid by Welitoff such additional consideration (apparently for the original sale to Welitoff) as that court should think would properly represent the difference in value between the property subject to the restriction and the property not subject to the restriction.

We think that in adding this condition to the decree the learned vice-chancellor lost sight of the essential nature of the equitable restriction resulting from a restrictive covenant, and confused it with the estate or interest in land which exists in the case of a legal easement. The latter, generally defined as "a liberty, privilege, or advantage without profit, which the owner, as such, of one parcel of land, may have in the lands of another," is said to lie "in grant" and is in fact a legal estate arising from a grant (actual or implied) of an interest in the survient property. The restriction resulting from a restrictive covenant, on the other hand, is not an estate in land at all, but is a pure creature of equity arising out of contract and (as applied against a subsequent grantee with notice) resting upon the equitable principle, as I understand it, that where an owner of land has purchased it with notice that a predecessor in title, as a part of the consideration which the latter paid for it, covenanted that it should or should not be used in a designated way in order that the use and enjoyment of other land of the party from whom he bought should be thereby benefitted, it would be inequitable to permit such owner, while enjoying the fruits of and claiming under the

former grant, part of the consideration for which was the benefit promised by the covenant, to destroy such benefit by violating the covenant. The sole purpose of the restriction is to protect the benefit contracted for by the covenant, and it will not be enforced for any other purpose. The owner of a legal easement has something to sell if he so chooses, and, as in the case of the sale of any other property, the price he can get for it depends upon its value to the purchaser, and not upon the amount of its previous benefit to the seller; nor is such price affected (except through an influence on the seller's mind) by a change of conditions which has materially reduced such previous benefit to the seller. Thus, a man owning a farm and having as appurtenant to it a legal easement of right of way over another's land to a public highway, in fixing a price at which he will sell and release such right of way to the owner of the survient estate at what it is worth to such survient estate to have the right of way terminated, is quite within his proper rights, and if in fact, by reason of the opening and construction of another and more convenient public highway alongside of the dominant estate, the right of way has lost most of its value to the dominant estate, this fact, except as it may influence its owner to accept a less price than he would otherwise accept, is not a matter which has any legal bearing upon the price which may justly be demanded for a release and extinguishment of the easement. In the case of a restriction arising from a restrictive covenant, on the other hand, the value to the owner of the restricted property, of a release of the restriction, has properly nothing to do with the consideration which should be demanded for such release nor with the damages which should be awarded for a breach of the covenant, but on the other hand the benefit to the property contracted to be benefitted by the covenant is the governing element in either event; and, if, by reason of changed conditions such benefit has so largely ceased to exist that it would be inequitable to enforce the restriction, equitable enforcement will be denied. Where it clearly appears, therefore, that one applying for injunctive enforcement of a restrictive covenant, has,

by reason of changed conditions, no equitably substantial benefit to be thereby protected, but that the application is, in fact, part of an attempt to levy and collect the increased value of the restricted property, the application will be denied, under the rule that one who invokes equity must do equity, and the applicant will be relegated to his action at law for whatever damages (nominal or substantial as the case my be) which he may suffer from the breach of the covenant when such breach shall have occurred. Obviously, the measure of such damage would be the difference in value of the benefitted property as protected by the restriction and as not protected thereby, at the time of the breach. The increase in the value of the restricted property resulting from a removal of the restriction, is something in which the owner of the benefitted property has no interest whatsoever. His sole concern in praying for the enforcement of the restriction is the protection of his benefit, and if for equitable reasons that is denied him and he is relegated to an action at law for a breach of the covenant, his sole concern is the damage done to his contractual rights, namely, to his benefit, by the breach of the covenant.

This, I understand, is the doctrine and properly results from the doctrine enunciated by Chief Justice Beasley, speaking for this court, in *Brewer* v. *Marshall, 19 N. J. Eq. 537,* where, after citing *Tulk* v. *Moxhay, Western* v. *MacDermott,* and a number of other cases, he said : "It will be found upon examination, that these decisions proceed upon the principle of preventing a party having knowledge of the just rights of another, from defeating such rights, and not upon the idea that the engagements enforced create easements or are of a nature to run with the land."

It is true that the equitable principle which restrains a man from violating a covenant restricting the use of his land entered into by his predecessor in title with the latter's grantor, and of which he had notice, has frequently been spoken of as if it arose from the fact that it would be unfair to permit one who had bought presumably at a lower price because of the imposed restrictive covenant, to make a profit by selling at a

higher price clear of the restriction. I confess I am unable to see just why such a profit or the absence of it is a matter of concern to a court of equity. Surely it cannot be that if there was a profit the restrictive covenant would be binding on the land sold, but that if there was a loss the covenant would not be binding. Frequently also a well anchored restrictive system enhances rather than depresses the value of the restricted lands. In new residential developments would-be purchasers pay more instead of less for restricted property because of the restrictions. But apart from this, it seems to me the reduced purchase price theory leads too far. If it is the reduced purchase price which gives life to the restriction, that life once fanned into being, would seem naturally to live on and on quite irrespective of changed conditions which, otherwise, would make it worse than obsolete. No matter what these changes were, the fact of a reduced consideration would remain, and with it the restriction. Accompanying benefits might have long passed away, but the barren burden of the restriction would seemingly still rear its blighting and forbidding countenance, because, forsooth, it owed its existence, not to the protection of the benefit which it originally conferred, but to the reduced price which it is assumed resulted from the restriction. Old restrictions which no longer benefit anybody or anything, and are consequently a blight and a nuisance, would persistently continue, whereas, every policy of nature and of human law requires that with the termination of their usefulness they should fade away.

Turning now to the restrictive covenant here involved, and having in mind the essential character of the equitable restriction resulting from a restrictive covenant, it is quite obvious that the covenant in this case either never had, or if it ever did have, has now ceased to have, any binding validity and effect. There was no neighborhood scheme (*Jennings* v. *Baroff, 104 N. J. Eq. 132,* and the cases there cited) and there never was any other property (except possibly the purchase-money mortgage interest above mentioned which has now ceased to exist) the more advantageous enjoyment of which the restrictive covenant was entered into in order to, and.

which it did, effect. Even in the case of a formally granted legal easement, the existence of the dominant estate is ordinarily essential to the validity of the servitude granted, and the destruction of the dominant estate releases the servitude. Obviously, from the very nature of the equitable restriction arising from a restrictive covenant, this necessity is even more essential in the case of such a restriction.

It is urged by the respondent that the prayer in the bill filed in this case to quiet complainant's title should not be granted because it is said that to decree claimant's title to be freed and cleared of the restriction claimed to have been created by the covenant, would be to destroy the covenant, and, therefore, to take away respondent's alleged rights to recover damages for its breach. We incline to doubt the soundness of this proposition. The restriction is a result (in equity) of the covenant but not the covenant itself, and of course, injunctive relief by enforcement of the restriction may be and frequently is denied without there being any impairment of the covenant as a vehicle for the recovery of damages for its breach. Changed conditions may make it so inequitable to enforce performance that such enforcement will inevitably be denied, but the right to recover damages for a breach of the covenant will not thereby be impaired. It would seem quite possible therefor that, under such circumstances, under a bill to quiet title the court of chancery might properly decree the restriction as such to be invalid and ineffective, but obviously, such a decree, like a denial of injunctive enforcement of the restriction, would leave the right (if such right existed) to recover damages for a breach of the covenant unimpaired. We do not, however, have to decide this point, for in the present case there could be no right to recover substantial damages for a breach of the covenant because there being no property to be benefitted by the performance of the covenant, there is no benefit to be destroyed or impaired by a breach of the covenant, and consequently no damage inflicted.

For the foregoing reasons, therefore, we think that the portion of the decree entered in the court of chancery deny-

ing the prayer for an injunction by the respondent, Kohl, in his counter-claim and granting the prayer of the complainant in his bill of complaint that the restriction be declared invalid and ineffectual, and that complainant's land be freed from the cloud thereof, be and the same is hereby affirmed, but the portion of the decree attaching a condition for alleged reimbursement to such declaration is reversed and hereby stricken out of the decree, the costs to be paid by the respondent.

*For affirmance*—None.

*For reversal*—None.

*For modification*—THE CHIEF-JUSTICE, TRENCHARD, PARKER, KALISCH, BLACK, CAMPBELL, LLOYD, CASE, BODINE, WHITE, VAN BUSKIRK, McGLENNON, KAYS, HETFIELD, DEAR, JJ. 15.