41 N.J. Super. 353 (1956)
125 A.2d 227
STEPHEN L. JAVNA, PLAINTIFF-APPELLANT,
v.
D.J. FREDRICKS, INC., DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued July 2, 1956.
Decided September 4, 1956.
*355 Before Judges CLAPP, HALL and HEGARTY.
Mr. Max Rosenbloom argued the cause for plaintiff-appellant (Mr. Sidney Cohn, attorney).
Mr. James A. Major argued the cause for defendant-respondent (Mr. G. Tapley Taylor on the brief).
*356 The opinion of the court was delivered by CLAPP, S.J.A.D.
Plaintiff entered into a contract with the defendant for the purchase of three vacant lots in the Borough of Maywood, N.J., paying $500 down on account of the purchase price. Under the terms of the contract, defendant was to refund to him the $500, together with search and legal fees not exceeding $125, in the event it could not give a "marketable title." In this action  so far as we need concern ourselves with it  plaintiff sues for the recovery of the $625. Judgment went against him below, and he appeals.
The three lots were part of a tract, 1100' x 600', comprising 44 lots, 28 of them in the borough's residential zone and 16, including the three sold, in one of its light industry zones. The borough conveyed the tract to Milton E. Zerman by deed dated December 16, 1947 and included in the deed the following covenant, which is the source of this litigation:
"The grantee herein agrees to commence the erection of dwellings on said premises, the construction cost of which shall be not less than $6000.00, within a reasonable time after delivery of this Deed."
Zerman then conveyed the tract to a corporation of which he was president, and it erected on 38 of the 44 lots (we are informed) "approximately fifty" one-family dwellings, including nine in the light industry zone. Three of the remaining lots were thereafter conveyed to the defendant, and they constitute the lots sold to the plaintiff.
The case comes before us on an agreed statement under R.R. 1:6-2, approved by the trial Judge, indicating that the central question below, as settled at the pretrial conference, was whether defendant's title was marketable. More particularly, the question was whether Zerman's agreement, above quoted, created a restrictive covenant which would be binding upon his successors in title so as to constitute a breach of the contract to give a marketable title.
Defendant argues that the plaintiff cannot complain of this alleged restriction because, as stated in a printed clause of the contract between them, the conveyance to the *357 plaintiff was to be made "subject to existing restrictions of record, if any." However in another clause, which was typewritten into the contract, the parties declared it to be their understanding and agreement that 
"the above mentioned land is zoned for light industry. In the event that it is not, then the contract shall be declared null and void * * *."
This latter clause, read with surrounding circumstances, plainly indicates that plaintiff wanted to acquire the land only if it could be used for light industry. In fact, as defendant knew at the time of the making of the contract, plaintiff was buying the land in order to erect a factory on it for his own business. The printed words must yield insofar as they conflict with the underlying purpose of the parties, disclosed in the typewritten words, to convey property for industrial use; they are to be read as requiring the plaintiff to take title subject to restrictions of record other than those designed to exclude light industry.
This brings us to the principal issue in the case, namely, whether the title to the three lots was marketable for the purposes of light industry. A title is marketable only if there is a reasonable certainty that it will not be called into question, so as to subject the purchaser to the hazard of litigation. La Salle v. La Pointe, 14 N.J. 476, 479-481 (1954); Simpson v. Klipstein, 89 N.J. Eq. 543, 545 (E. & A. 1918). However, a title is not rendered unmarketable merely because a purchaser may be subjected to litigation which has no rational justification. Smith v. Reidy, 92 N.J. Eq. 586, 592 (Ch. 1921).
Can we say, then, that it is reasonably certain that if the three lots were to be used for industrial purposes, the title would not be subject to any rational attack? An examination of Zerman's covenant
"to commence the erection of dwellings on said premises * * * within a reasonable time after delivery of this Deed"
raises questions. Was the covenant satisfied by a mere commencement of the dwellings, or was Zerman called upon *358 not only to start them within the time stated, but to complete them in due course? If so, how many dwellings? Was he to devote the whole tract to residential purposes? Or could he have erected two dwellings on the lots in the residential zone and factories on the other lots? Or was any agreement on his part fully executed when he built "approximately fifty" houses? We have not been furnished with the slightest indication of the answers to these questions.
In construing a restrictive covenant, we often look to the circumstances under which it was created, for covenants are to be read in the light of those circumstances. Meaney v. Stork, 80 N.J. Eq. 60, 65 (Ch. 1912), affirmed 81 N.J. Eq. 210 (E. & A. 1913); Mannion v. Greenbrook Hotel, Inc., 138 N.J. Eq. 518, 521 (E. & A. 1946); Riverton Country Club v. Thomas, 141 N.J. Eq. 435, 440 (Ch. 1948), affirmed 1 N.J. 508 (1948); Restatement, Property § 527. But here we do not know what those circumstances were. We do know that at the time of the deed from the borough to Zerman there was a housing shortage in the State, "an acute public emergency." L. 1946, p. 1351, N.J.S.A. 55:14G-1. We may speculate (if it is a matter of any interest) whether the borough offered Zerman some inducement in return for his personal covenant to proceed within a reasonable time, or whether he gave this covenant in a spirit of benevolence and without receiving any consideration for it. But we are not clearing up doubts with these speculations.
The above stated questions cannot be satisfactorily answered. On the other hand, they cannot be brushed aside with any confidence. All we can say is that Zerman's successors in title are put on notice of some agreement, we know not what, with respect to the erection of houses on the premises. A title is not marketable if the public records place a purchaser on notice of questions as to matters lying outside the records, where the matters are not easily establishable and the questions may reasonably be expected to expose him to the hazard of litigation. Rutherford Land & Improvement Co. v. Sanntrock, 44 A. 938, 939 (Ch. 1899), *359 affirmed 60 N.J. Eq. 471 (E. & A. 1900); Fahy v. Cavanagh, 59 N.J. Eq. 278, 283 (Ch. 1900); Deseumeur v. Rondel, 76 N.J. Eq. 394, 402 (Ch. 1909); Sulk v. Tumulty, 77 N.J. Eq. 97, 98 (Ch. 1910); Lampros v. Tenore, 142 N.J. Eq. 293, 296 (Ch. 1948).
Defendant's principal contention is that Zerman's covenant is personal  that is (as we understand the contention), that it does not bind Zerman's successors in title. Hendlin v. Fairmount Construction Co., 8 N.J. Super. 310 (Ch. Div. 1950), is cited. But the argument seems to overlook the general rule (subject to exceptions) that in equity a restrictive covenant made by a grantor with his grantee as to the use of land binds the grantee's successors in title who take with notice, even though at law it is, or at one time was, deemed to be personal. Riverton Country Club v. Thomas, 141 N.J. Eq. 435, 446, 447 (Ch. 1948), affirmed 1 N.J. 508 (1948); Van Doren v. Robinson, 16 N.J. Eq. 256, 261 (Ch. 1863); Brewer v. Marshall and Cheeseman, 19 N.J. Eq. 537, 544 (E. & A. 1868).
Perhaps defendant's point is that the covenant before us does not indicate an intention on the part of the borough and Zerman to bind Zerman's successors in title. If there was no such intention, the burden of the covenant will not run. Restatement, Property, §§ 531, 539h. Note the discussion in Tiffany, Real Property (3rd ed.), § 862. It becomes pertinent, then, to inquire whether the purpose of the parties to the covenant was merely to create a temporary situation involving only Zerman, and not his successors. Or was it the purpose of these parties, or an inherent part of it, to have the land devoted to residential uses, thus creating a status having some degree of permanency? Restatement, Property, § 531d. It matters not that the parties omitted the word "assigns," or some equivalent word, in the covenant  that is, failed to bind Zerman "and his assigns"; such an omission does not prevent the burden of the covenant from running. Conover v. Smith, 17 N.J. Eq. 51, 56 (Ch. 1864), criticizing one of the resolutions in Spencer's Case, 5 Co. 16a, 77 Eng. Rep. 72 (K.B. 1583), on which defendant *360 relies; 2 Am. L. Prop., § 9.25; 14 Am. Jur. 499, 500. See N.J.S.A. 46:4-2.
It should be observed that this contention, that the parties did not intend the burden of the covenant to run, cannot be dismissed lightly. But the difficulty with it is that in passing on the marketability of the title we must be reasonably certain that the parties intended only to impose a burden on Zerman and had no intention to preclude his successors in title from putting up factories (such as the one proposed here) in case he did not go through with this undertaking of his, whatever it was. Since we do not have the requisite sense of certainty, the contention must fail.
There are other questions in the case, a few of which should perhaps be noted, even though they are not dealt with in the briefs:
(a) Who may enforce the alleged restriction? Where a municipality sells land owned by it, undertaking to have it developed in order perhaps to meet a housing shortage and imposes a restrictive covenant in the deed, all in the public interest, may it enforce the covenant against the covenantor's successors in title, even though it never owned any other land benefited by the restriction? See Stone, "Equitable Rights and Liabilities of Strangers to a Contract," 18 Col. L. Rev. 291, 312-315 (1918), criticizing London County Council v. Allen, [1914] 3 K.B. 642 (C.A.), a decision which was stated by one of the English judges concurring therein, to be "very regrettable," but nevertheless compelled by English precedent, and which was corrected by the 1936 Housing Act in connection with the operation of that act. 25 Geo. 5 & 1 Edw. 8, c. 51, § 148. Cf. Welitoff v. Kohl, 105 N.J. Eq. 181 (E & A. 1929); Restatement, Property, § 537 and comments; but cf. 2 Am. L. Prop., § 9.32. See, too, Vacca v. Stika, 21 N.J. 471, 477 (1956). In this case we have nothing before us to indicate whether the borough ever had property benefited by the alleged covenant.
(b) If the municipality could not sue to enforce the covenant and if the benefit of the covenant was not intended to run to the 50 homeowners, nevertheless could the municipality assign an interest in the covenant to one or more of these homeowners, and could the assignee then sue upon the covenant on the basis of the assignment? Restatement, Property, § 552.
(c) Zerman's covenant, under which he agreed to commence the erection of dwellings, appears to be affirmative in character; but even if affirmative covenants are not enforceable (a matter on which we do not pass. Cf. Conover v. Smith, 17 N.J. Eq. 51 (Ch. 1864); but see De Gray v. Monmouth Beach Club House Co., 50 N.J. Eq. 329, 333 (Ch. 1892). In general see 2 Am. L. Prop., § 9.36 and *361 A.L.R. notes cited), nevertheless could it be said that this covenant has a negative aspect  viz., not to erect factories or buildings of a nonresidential character; and that in any event this aspect of the covenant is enforceable?
We by no means decide that the three lots are subject to restrictive covenants which are enforceable by the borough or some person and are binding upon Zerman's successors in title, restricting the land to residential uses. In fact, we have considerable doubts on the matter. However we have been unable to put these doubts to rest. It is indeed true that equity does not lend its aid in the enforcement of a restrictive covenant where the right to relief is doubtful. Houston Petroleum Co. v. Automotive Products Credit Ass'n, 9 N.J. 122, 133 (1952). But even so, a claim for equitable relief is not an irrational possibility here; we cannot be reasonably certain that plaintiff would not have been exposed to litigation, had he taken title and built the factory. Cf. Smith v. Reidy, 92 N.J. Eq. 586 (Ch. 1921). As to the right to relief at law, see Welitoff v. Kohl, 105 N.J. Eq. 181 (E. & A. 1929); 14 Am. Jur. 667, 668.
It should be noticed (even though too much significance cannot be attached to the matter) that in order to meet plaintiff's objections as to the title to the three lots, defendant undertook (as the parties have stipulated) "without prejudice * * * on a few occasions" to get the borough to release these lots from Zerman's covenant, but without success. Ultimately the defendant sold the lots to another who erected one-family residences thereon.
Plaintiff contracted for a title free of all reasonable doubts. Instead he was offered one which raises a host of them, a pig in the poke. Defendant was obligated by the contract to take the pig out of the poke and dispel the doubts. Or, as Backes, V.C., has said, "it is the vendor's duty to sweep the house." Burke v. Dorfan, 101 N.J. Eq. 84 (Ch. 1927).
We understand that the parties have agreed on all the facts, including, if plaintiff is to recover, the amount of his recovery, namely $625. The judgment below will be reversed with directions to enter judgment for plaintiff in the sum of $625.