Page *v.* Murray.

HENRY A. PAGE

*v.*

MICHAEL J. MURRAY.

1. The purpose of a covenant, restricting the use of land, was to protect the locality to which it applied from businesses that were apt to create nuisance, and from buildings of the cheapest grade, and thereby to bring to the locality a better class of buildings, and ensure its occupation by quiet, orderly and well-to-do people, and to that end, among other things, it fixed a minimum price that all buildings, to be erected upon the affected land, must cost.

2. When the term of such a covenant has nearly expired, and the character of the locality has so changed as to render it apparent that buildings of the class contemplated by the covenant will not be built upon the affected land, and that, upon the expiration of the agreement, cheaper buildings will be erected on it, and that, in the meantime, if the covenant should be specifically enforced, the lands affected by it could not be profitably used, and the complainant himself has built a house upon the affected land which does not comply with the spirit of the covenant, this court will not, at the instance of the complainant, enforce obedience to that part of the covenant which requires erections to be of a certain price, especially where it appears that the erection objected to will not be detrimental to him; but it will leave the parties to the law.

On May 10th, A. D. 1873, Marshall L. Ward and Peter Gerbert entered into a written agreement with the complainant, Henry A. Page, by which they were permitted to extend a road, called Valley street, which they had opened in certain lands owned by them in Orange, over the lands of Page and into and through Clark place (a private way belonging to Mr. Page) to Montrose avenue, in consideration of their entering into the following covenant with reference to the use of their land : -

"And the said parties of the first part, in consideration of the above, and of the sum of one dollar in hand paid to the said party of the second part, the receipt whereof is hereby acknowledged as aforesaid, do hereby covenant, promise and agree, to and with the said party of the second part, his heirs and assigns forever, that neither the said parties of the first part, nor either of them, nor their or his heirs or assigns, shall or will, within the space or term of twenty years from the day of the date hereof, erect or maintain, or suffer to be erected or maintained, upon the said lands and premises of the said parties of the first part, within the bounds and limits aforesaid, or upon any part thereof, any hotel, tavern, ale or lager beer saloon, restaurant, livery stable, slaughterhouse, smith or tinshop, forge, foundry, furnace, machine-shop, steam-engine, hat factory, tannery, brewery, distillery, circus, or any factory for the production of glue, varnish, vitriol, ink, soap, candles, storage of turpentine, or any building or other erection for the carrying on of any other trade or business noxious, offensive or dangerous to the neighboring inhabitants ; or any place or building in which shall be sold, or exposed for sale, any malt, vinous, spirituous or intoxicating liquors ; nor within said space or term of twenty years erect or maintain, or suffer to be erected or maintained, upon said lands and premises, or upon any part thereof, any building or other structure which shall severally cost less than the sum of three thousand dollars of lawful money, except such out-buildings as shall be necessary or convenient for the same as a place or places of residence or of business, it being understood and agreed that the foregoing covenant, and every part thereof, shall be attached to the above-described lands and premises of said parties of the first part, and shall run therewith, and shall be embodied in all future conveyances of the same to be made by them, their heirs or assigns, during the space or term aforesaid ; and that it shall be lawful, not only for the said Henry A. Page, his heirs or assigns, but also for any other person or persons deriving title from him or them, or either of them, whether mediately or immediately, for any of the said lands and premises belonging to him, or either of them, as aforesaid, to institute and prosecute any suit or other proceeding at law or in equity for any violation or threatened violation of said covenant, or any part thereof."

On December 15th, 1873, Messrs. Gerbert and Ward, with their wives, conveyed a portion of their lands, which were within

the agreement referred to, to one Willard E. Howell by deed, duly recorded, containing the following covenant by the grantee:

"And the said party of the second part doth for himself, his heirs and assigns, covenant to and with the said parties of the first part, their heirs, executors, administrators and assigns, that neither the said parties of the second part, nor his heirs or assigns, shall, or will, within the said space or term of twenty years next hereafter, erect or maintain, or suffer to be erected or maintained, upon said lands and premises, or any part thereof, any building or structure which shall severally cost at least the sum of three thousand dollars of like lawful money, in addition to such out-buildings as shall be necessary or convenient for said house or houses as a place or places of residence, it being understood and agreed that the foregoing covenant shall be attached to the above-described lands and premises and shall run therewith; and that it shall be lawful, not only for the parties of the first part, or either of them, their heirs and assigns, but for any other person or persons deriving title from them, whether mediately or immediately, for any of said lands and premises conveyed unto the said parties of the first part aforesaid, to institute and prosecute any suit or other proceedings at law or in equity for any violation or threatened violation of the said covenant, or any part thereof; and, also, that said covenant shall not be enforced personally against any person or persons not being the owner or owners of said above-described land and premises, or a part thereof, at the time of such violation or threatened violation of said covenant, or any part thereof."

On June 19th, 1877, Howell, together with his wife, by deed, which was duly recorded, conveyed to Charles P. Jacqui a portion of the lands which had been conveyed to him by Gerbert and Ward. This deed did not contain any restrictive covenant, and did not refer to the agreement between Gerbert and Ward and Page.

On May 3d, 1880, Jacqui conveyed to one Scott by deed, duly recorded, but without restrictive covenants or reference to the agreement between Gerbert and Ward and Page, and on August 4th, 1886, Scott conveyed to the defendant, Michael J. Murray, without restrictive covenant or reference to the agreement aforesaid, a plot of land included within the agreement fifty feet wide and, about one hundred and seventy feet deep, fronting on Valley street.

On August 1st, 1887, Murray mortgaged the land he had purchased to George P. Kingsley, who is a defendant in this suit.

Messrs. Murray and Kingsley employed a lawyer to examine the title to the plot about to be purchased by Murray, and that lawyer, in process of such examination, obtained from the register of Essex county an official certificate of search, which exhibited as of record the agreement between Ward, Gerbert and Page as follows :

"MARSHALL L. WARD AND PETER GERBERT TO "HENRY A. PAGE.

B. 17- 457. Cons. $1.00. Ag'mt dated May 13, 1873. Ag'mt Rec'd June 17, 1873. Ag'mt as to Valley Street &c. and also with restrictions as to buildings &c. &c."

The defendants know nothing of the agreement beyond this minute of it in the register's certificate of search, but they both knew of the covenant which the deed from Ward and Gerbert to Howell contained.

In 1887, Murray erected a house upon his land, which, when finished, will cost about $2,000.

The cause is now upon final hearing upon the pleadings and a state of facts agreed upon.

By the state of facts it appears, in addition to the matters above set out, that on May 17th, 1873, Gerbert and Ward conveyed to Page a portion of the lands, which were covered by the agreement with him, by warranty deed, which does not conform to their agreement and contain a restrictive covenant. Upon the land thus had the complainant, before the defendant Murray began to erect his house, built a greenhouse seventeen feet wide, one hundred and fifty feet long and one story high. This building extended to the line of Valley street and there terminated in an office or store for the exhibition and sale of flowers and plants. At the rear of the greenhouse, connecting by a single door therewith, is erected a dwelling which is upon land not subject to the agreement with Gerbert and Ward. It would cost $2,000 to erect the greenhouse with its office and store, and $4,000 to build both the greenhouse and the dwelling. The greenhouse is four or five hundred feet south of the complainant's residence, and three hundred and sixty feet north of Murray's house.

Four hundred feet north of Murray's house, and outside of the lands covered by the agreement, and fronting on Valley street, is erected a dwelling that cost less than $2,500, and across the street from it another building that cost about the same amount, and then, to the north, Valley street is built up with houses, some twenty or more, that range, in value, between $700 and $2,500 apiece, ten of which have been erected since the agreement of 1873 above referred to, and three of which (costing about $1,000 each) were in process of erection when Murray commenced to build his house. In addition to the greenhouse and Murray's dwelling, no other house is built upon Valley street, upon lands covered by the agreement, and only one building, upon that street, to the south of those lands, and that house cost $8,000.

*Mr. John L. Blake,* for the complainant.

*Mr. E. M. Colie,* for the defendant.

THE CHANCELLOR.

In disposing of this case I will not pass upon questions suggested, whether the covenant contained in the agreement between the complainant and Gerbert and Ward runs with the land and extends to subsequent purchasers with notice of it, whether the defendant had constructive notice of that covenant, or sufficient actual notice of its existence to put him upon inquiry as to its terms, or what is the proper construction of the covenant in the deed from Gerbert and Ward to Howell, of which the defendants admit knowledge. I will assume that each of these questions may be resolved in favor of the complainant, and then proceed to the consideration of the questions of equity which the case presents.

Under such assumption the complainant has two remedies : an action at law for breach of the covenant, and a suit in equity to restrain an erection in violation of the covenant.

There can be little doubt that in a case of this character the mode of relief by injunction, which equity affords, is more complete and satisfactory than repeated actions at law, which may be

necessitated by continuing breaches of the covenant. The complainant has preferred resort to that relief, and, as it is specific performance, a discretionary relief, the question to be now determined is, whether it shall be afforded to him or whether he shall be left to his remedy at law.

The evident purpose of the covenant was to protect the locality to which it applied from businesses that were likely to create a nuisance and buildings of the cheapest grade, and thereby bring to it a better class of buildings and ensure its occupation by quiet, orderly and well-to-do people. With this intention the covenant arbitrarily names a price that all buildings, to be erected, must cost.

Immediately beyond the northerly limits of the land which is subject to the covenant, the character of Valley street has been determined by the erection of more than twenty houses that have cost less than $3,000 apiece. The cost of the majority of them has ranged from $700 to $2,500 each. They extend to the very boundary of the land included within the covenant, and establish that more expensive houses must ultimately be unmarketable and unprofitable in that street. Together with this circumstance is the fact that the restrictive covenant, in question, will soon expire, and that enforcement of obedience to the requirements of it now will practically result in depriving the owners of the affected land of the use of their land as long as the covenant continues in force. When the covenant ceases to restrict the use of the land, the street will undoubtedly be built up with houses similar to that which the defendant Murray has erected.

Murray's house is three hundred and sixty feet from the most northerly boundary of the complainant's land, and a much greater distance from that part of his property which is improved by habitations superior to it. So far, indeed, is it from the defendant's residence and other residences of the same class, that it was well-nigh completed before the complainant either saw it or heard of it.

In this situation it manifestly would be inequitable to deprive the defendant of the privilege of conforming the building upon his property to the character of the buildings surrounding it, and

thus use it to his greater advantage, especially where it is not perceived that it will be in any respect detrimental to the complainant. It is true that, to some extent, the future character of Valley street north of Murray's land was foreshadowed at the time of the agreement between the complainant and Gerbert and Ward, but it was not then so pronounced as at present, and then the agreement had twenty years to run, a time apparently sufficient to ensure a change in that character over the portion of the land affected by the agreement; but now, after seventeen years have expired, and no buildings of the value contemplated, have been built on the land affected by the agreement, while, upon adjacent land, cheaper buildings have multiplied, it appears to be too late for the covenant to secure the desired end. I think that these circumstances present a case which, in principle, is not unlike the case of *The Trustees of Columbia College* v. *Thacher*, *87 N. Y. 311*, where the court of appeals of New York held that equity would refuse to enforce a covenant, not to devote certain property to business purposes where there had been such a change in the character of the neighborhood by the building of an elevated railroad and the increase of business houses, as to defeat the object and purpose of the agreement, and render it inequitable to deprive such owner of the privilege of using his property as its surroundings required.

But there is another circumstance in this case which aids the defendants. The complainant took from Gerbert and Ward a conveyance of a part of the affected lands which did not contain a restrictive covenant, as his agreement with them required, upon which he has erected a building that, in a questionable manner only, complies with the agreement he seeks to enforce. Unless the greenhouse and adjoining dwelling are taken as one, the cost of their erection will not be as much as $3,000. They are built upon separate foundations, have separate entrances, and are used for different purposes. They can be regarded as one building, only because they adjoin and open into each other. Even when they are taken together, they present an obstacle which is quite as detrimental to the improvement of the neighborhood, in accordance with the intent and spirit of the covenant, as the de--

fendant Murray's house. The building is three hundred and sixty feet south of Murray's house and between it and the complainant's house and other similarly expensive establishments, forming, as it were, a long, low barrier between the two classes of residences. I cannot escape the conclusion that its effect upon the land north of it, which is between it and the cheaper buildings on Valley street, scarcely eight hundred feet, is to impair the very advantages which the covenant was intended to maintain.

The complainant's acceptance of the conveyance last mentioned, without a restrictive covenant, and his subsequent erection of the greenhouse and small dwelling, evince a disposition upon his part not to, himself, observe the spirit and intent of the covenant, and present an equity for the defendant of the character that induced Lord Eldon, in *The Duke of Bedford* v. *Trustees of the British Museum, 2 Myl. & K. 552,* to withhold the enforcement of a covenant essentially similar to that which is here considered. There the covenant was not to use land in a particular manner. Its purpose was that the grantor might have more ample enjoyment of adjoining lands. It was held that a court of equity would not enforce the covenant where subsequent acts of the grantor, or those claiming under him, so altered the character and condition of the adjoining lands that the restriction of the covenant ceased to be applicable according to the intent and spirit of the contract, but that under such circumstances it would leave the parties to their remedy at law.

Upon these considerations, I am of opinion that the assistance of this court in the enforcement of this covenant should be denied, and that the complainant should be left to his remedy at law.