47 N.J. Super. 534 (1957)
136 A.2d 423
LEASEHOLD ESTATES, INC., A NEW JERSEY CORPORATION, PLAINTIFF-RESPONDENT,
v.
FULBRO HOLDING COMPANY A NEW JERSEY CORPORATION, AND G. & P. PARKING CORP., A NEW JERSEY CORPORATION, DEFENDANTS-APPELLANTS, AND DUDLEY F. PARKER AND HENRY M. HOYT, TRUSTEES AND INDIVIDUALLY; SIDNEY A. FRANKLIN AND VIOLET FRANKLIN, HIS WIFE; COLONIAL LIFE INSURANCE COMPANY OF AMERICA, A NEW JERSEY CORPORATION, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued September 4, 1957.
Decided November 22, 1957.
*538 Before Judges GOLDMANN, FREUND and CONFORD.
Mr. Charles Danzig argued the cause for Fulbro Holding Company and G. & P. Parking Corp., defendants-appellants and cross-respondents (Messrs. Riker, Emery & Danzig and Mr. Alvin Weiss, attorneys).
Mr. Vincent P. Biunno argued the cause for Leasehold Estates, Inc., plaintiff-respondent and cross-appellant, and Sidney A. Franklin and Violet Franklin, defendants-respondents (Messrs. Lum, Fairlie & Foster, attorneys).
The opinion of the court was delivered by CONFORD, J.A.D.
Here the principal matter in controversy is the construction and extent of the present right of enjoyment of certain easements in respect to an alley running off Fulton Street, near the intersection of the northerly line of that thoroughfare and the easterly line of Broad Street, in the City of Newark.
Our exploration of the factual background of the case from the record before us takes us back to the mid-nineteenth century, when the neighborhood of Broad and Fulton Streets was part of a high-grade residential area of the City of Newark. Cortlandt Parker, a leading lawyer of the day (father of Charles W. Parker, a Justice of our former Supreme Court), acquired the northeast corner of that intersection as a single tract in 1851 to the extent of 184 feet on Fulton Street and 170 feet on Broad Street. Subsequent *539 conveyances by Parker resulted in the creation of four residential lots, three facing Broad Street and one Fulton Street, and a residual alley fronting on Fulton having a width of 10 feet to a depth of 90 feet and thence widening to 20 feet almost the entire remaining depth of the Parker holding. The rough sketch which follows is Joint Exhibit 1 of the Stipulation of Facts, upon the basis of which this case was tried in the Chancery Division. It shows the
 *540 lots resulting from the conveyances by Parker, the indicated parcel numbers being for convenience of reference. The courses and distances are taken from deeds of record. Parcel 3 is the locus of the presently controverted easements. Parcel 1 was for some years the residence of Cortlandt Parker.
Parcels 1, 2 and 3 are, it is stipulated by the parties, presently owned by defendant Fulbro Holding Company (hereinafter referred to as "Fulbro"). The defendant G. & P. Parking Corp. is in possession of said parcels by lease from Fulbro. Parcels 4 and 5 are presently owned, respectively, by the defendants Sidney A. and Violet Franklin, and the plaintiff Leasehold Estates, Inc. (hereinafter referred to as "Leasehold"). The other defendants in the case are incumbrancers. Leasehold and the Franklins claim a right of way for ingress and egress to and from Fulton Street over parcel 3 and contend that their rights are being violated through the obstruction of parcel 3 by cars commercially parked thereon by G. & P. Parking Corp., under authority of Fulbro. The trial court generally sustained their position and granted injunctive relief.
It is stipulated that parcels 1 and 3 were retained in the ownership of Parker, and subsequently of his heirs and devisees, until their conveyance to Fulbro in 1952, along with parcel 2. Parcel 2 was out of the ownership of the Parker interests from 1852 until 1911, when it was conveyed to the Parker heirs by its then owner. Understanding of this controversy requires careful attention to the contents of Parker's deeds of conveyance of parcels 2, 4 and 5.
On March 30, 1852 Parker conveyed parcel 2 to Robert Trippe. The first course in the deed runs:
"to the westerly side of an alley intended to be used in common by the party of the first part [Parker] his heirs and assigns and the said party of the second part [Trippe] and all persons acquiring the lot hereby conveyed, by descent or purchase from him as hereinafter provided * * *."
The second course runs "along the said alley" a distance of 90 feet; and immediately following the description there is an express grant in these terms: *541 "also the right of way and free use for ingress and egress by and unto the said party of the second part and all persons who shall be owners of the above described lot of land * * * subject nevertheless to the reservation and covenants hereinafter contained which alley runs from said north line of Fulton Street in a northerly direction along the east end of the premises * * * and is in width ten feet."
On February 12, 1853 Parker conveyed parcel 4 out of the tract to Richmond Ward. Parcel 4 fronts on Broad Street for a width of 60 feet, and it extends back to the alley, which, at the point of such extension, is 20 feet wide. The description in the Ward deed runs the second course "to an alley in the rear at that point twenty feet wide." and the third course runs "thence along the alley * * *." Then follows a grant of alley rights in these terms:
"Together with a right of way and passage for the said party of the second part [Ward] his heirs and assigns while owners of the tract of land above described his and their agents and servants, with horses carriages and otherwise for the purpose of ingress and egress to and from barns and stables upon the rear of said lot to be erected, and unto the rear of said lot until the same may be erected over and through said alley running in from Fulton Street ten feet wide and at the rear of said property hereby conveyed widening to twenty feet and so extending along the rear thereof the said right of way being subject nevertheless to the payment of a share in the expense of maintaining said alley in good repair keeping up the fences thereof paving and grading the same and maintaining a suitable gate thereto in common with all persons owning property thereon who have a right thereto and proportionate to the amount of frontage by each owner possessed, such repairs and maintenance to be determined by said owners according to their said interest."
Ward covenanted in the deed with Parker that no building would be erected on his property for a period of twenty-five years on any line nearer the line of Broad Street than the line of the front wall of Parker's dwelling house, which was described therein as situated on the parcel immediately to the south of the parcel conveyed to Ward. Parker reciprocated by the same covenant concerning his properties north and south of parcel 4. The parties mutually agreed that a minimum space of five feet should remain open between the north wall of the house to be erected by Ward and the *542 boundary line of his parcel. It was also mutually agreed between Parker and Ward that the aforementioned restrictions did not prohibit the attachment to the front of the houses on any of the lots of "any open portico, piazza, or other ornamental appendage not thereby unreasonably obstructing the view from the front of the house contiguous," and that "the rear of said lots upon said alley, by them owned shall be used exclusively for barns or stables and in such a manner as that neither party or his assigns shall by the use thereof create any nuisance whatever."
On April 10, 1854 Parker conveyed parcel 5 to Theodore P. Howell. The first course in this deed runs to the westerly line of the alley referred to, the same being designated as "there 20 feet" in width. The second course runs "along said alley"; and following the description of the land conveyed in the deed, there is the following grant:
"Together with a right of way for the said party of the second part his heirs and assigns of the tract of land above described his and their agents and servants with horses carriages and otherwise for the purpose of ingress and egress to and from barns and stables standing or to be erected upon the rear of said lot and unto the rear of said lot until they shall be erected over and through said alley running in from Fulton Street ten feet wide and at the distance of ninety feet from Fulton Street widening to twenty feet and so extending along the rear of said lots heretofore conveyed to said Richmond Ward and along the rear of said land above described and conveyed for about Eighteen feet then narrowing to about three feet wide to the line of said lot on the north the said right of way being subject nevertheless to the payment of * * *."
Then follow covenants and agreements similar to those in the Ward deed, providing for common sharing of expenses of maintenance of the alley, restricting construction of buildings closer to the line of Broad Street than the existing Parker dwelling, subject to ornamental appendages, etc., and also the following express agreement:
"And said parties hereby further mutually agree that the front upon said alley by them respectively owned or to be hereafter owned shall be used exclusively for barns or stables and in such a manner *543 as that neither party or his assigns shall by the use thereof create any nuisance whatever. And the said Parker further agrees as aforesaid that he will not convey any right-of-way in said alley to any person whatever except for the purpose of being used for ingress and egress to and from a barn or stable to be erected on the rear of premises occupied by said person as his dwelling house and with the express condition to be void in case the same shall be hired to or used by any other person than the occupants of said dwelling house as well as render the same covenants as to nuisances herein contained."
It may be noted that the Howell deed also expressly includes in the grant "the barn or stable now standing on said premises."
There are no atlases or maps available to indicate the use to which the Parker tract was being put at or about the time of these conveyances, but references in the deeds abstracted in the stipulation of facts establish beyond any doubt that the then and reasonably foreseeable future use of the entire tract and neighborhood was residential. There are the deed excerpts already noted, referring to the then existent Parker dwelling; to building set-back requirements in terms of non-obstruction of view and uniformity of line; and to restrictions on the use of the rear of the lots to barns and stables. In the case of the Howell deed, there is Parker's agreement to confine any future grants of rights of way in the alley to residential owners. The deed for the tract from Van Rensselaer to Parker in 1851 contains a course running "to the westerly wall of a brick house, the first of a row of brick dwellings * * *."
The stipulation of facts contains practically no direct factual data concerning the specific nature of the use of parcel 3 by any of Parker's grantees or their successors. Aside from historical evidence from city atlases dating from 1873 as to the physical structures existent upon the various lots from time to time, and certain leases to which reference will be later made, the only evidence as to use of the alleyway in the record is the stipulation that:
"While it is known that use was made of the alleyway for ingress and egress by means of parcels 4 and 5, by motor vehicle and on *544 foot, for business purposes, up until the blocking of the alleyways by the parking of automobiles thereon, the exact extent of such use as to regularity, frequency and the like is not known."
This was supplemented at the oral argument only to the extent of the assertion by Leasehold's counsel, upon inquiry by the court, that trucks can be driven into the building now standing on parcel 5 through doors in its rear wall.
The history of the improvement of the properties here involved is as follows.
We deal first with parcel 5. In 1854 Theodore P. Howell acquired from one James M. Jones a 20-foot parcel of land on Broad Street, with a depth of 168 feet, immediately north of parcel 5, the 30-foot tract he purchased from Parker at about the same time. This 20-foot tract, of course, had no rights in the projected parcel 3 alleyway. In 1859 Howell conveyed both parcel 5 and the 20-foot parcel by a single deed with separate descriptions for the two parcels to Richmond Ward. In 1866 Ward divided the assembled plot into two 25-foot lots, conveying the southerly lot to George A. Clark and the northerly lot to Alexander Dunn, the latter by a single description inclusive of five feet from the Parker parcel 5 and the 20-foot Jones lot. The deeds to both Clark and Dunn grant "alley rights" and are made subject to the restrictions in the Parker-Howell deed, although only five feet of the land described in the deed to Dunn came from parcel 5. The descriptions in both deeds run to a dividing line between the parcels conveyed running through "the middle of the [a] partition wall dividing the two dwelling houses recently erected by" Ward.
The continued existence thereafter of two dwellings, with a common sidewall, on the 25-foot lots carved out of parcel 5 and the 20-foot Jones lot, is confirmed by the 1873 Atlas of the City of Newark, which shows such structures, with street set-backs paralleling dwellings on parcels 4 and 1. The atlas also shows a structure on parcel 2, roughly corresponding with a dwelling which was known to have stood there until it was torn down after Fulbro acquired title *545 in 1952. The alley is shown as terminating with the southerly side line of parcel 5.
The City Atlas of 1889 shows the structures in the same location as the 1873 atlas, the residence on parcel 1 being designated as of stone, and all the others as of brick. Frame structures of undescribed nature are shown on parcels 2 and 4. The alley appears only in its 10-foot width, merging into an extended parcel 4. The same structures continue to be shown in the 1901 Atlas, but the frame structures are not marked by the key designation, "sheds, stables," but as undifferentiated "frame." The alley open space, however, is here shown running the full depth behind all of the residence plots mentioned above fronting on Broad Street.
The first indication of a change of the Parker tract to commercialization is found in the 1911 Newark Atlas. This shows a brick structure occupying practically the entirety of parcel 1, marked "Sam S. Schubert Theatre," later known as the Broad Theater. The structure on parcel 4, apparently the same one, physically, as theretofore, is designated "Y.W.C. Ass'n"; those on the northerly 25-foot plots and on plot 2 appear structurally unchanged. In the main, the alley is shown as on the 1901 Atlas.
The 1926 City Atlas shows a brick structure occupying the entirety of parcel 4 and another single brick structure occupying the entirety of the two northerly 25-foot lots. The alley runs only to the depth of the southerly one of the 25-foot lots, and a 12-foot square frame structure appears at the northwesterly corner of the alley. For convenience, we shall hereinafter refer to the two 25-foot lots as parcel 5 (as noted, it includes 20 feet not originally in parcel 5 and to which the alley rights in the original Parker-Howell deed did not extend). The parcel was acquired in 1921 by Franklin Motor Car Company, and the stipulation of facts recites that the present structure thereon "was probably erected" at about that time. It was originally constructed with a garage and showroom on the first floor, and a pair of large doors open at least partly upon the alleyway (there *546 is no evidence in the record as to the width of the doors, nor any precise location of them in reference to the original easterly 30-foot side lot line of parcel 5; consider, moreover, that the northerly 10 feet of the alleyway had a width of only three feet, as shown in the sketch, Joint Exhibit 1). Since the bankruptcy of Franklin Motor Car Company in 1923 or 1924, the building has been occupied by business tenants. The present tenant conducts a retail furniture store in the premises.
The stipulation of facts recites that the present structure on parcel 4 (as shown on the 1926 Atlas) "was probably erected between 1919 and 1922," having been acquired in the latter year by Bonnell Motor Car Company. It was originally constructed as an automobile showroom and garage, with an apartment for dwelling purposes on the second floor. There were vehicular entrances to the building in the front on Broad Street, as well as in the rear on the alleyway. About 1928 the Bonnell concern left the building and it was then converted by a new owner into a theatre. Two fire exits were placed in the rear wall opening into the alleyway. The former showroom was converted into two store premises, and the apartment remains.
After Fulbro acquired title to parcels 1, 2 and 3 in 1952, it razed most of the Broad Theater structure on parcel 1, as well as the structure on parcel 2. The cleared area was then paved with asphalt along the full width from the rear wall of the remainder of the theatre building to the easterly line of parcel 3, but not including that part of the alleyway along the rear of parcels 4 and 5. The G. & P. Parking Corp. went into possession of these lands as tenant, and, at times of peak demand, parks vehicles the full depth of the alleyway along the rear of parcels 4 and 5. Such parking does not block use of the alleyway by foot along the rear of parcels 4 and 5 but prevents access to that portion of the alley by vehicles. The method of parking of vehicles on the 10-foot segment of parcel 3 is laterally across the alley segment of the now integrated parking lot, so that, when fully occupied, even access by foot to the alley in the rear *547 of parcels 4 and 5 is prevented except by trespassing upon parcel 2, to which Fulbro says it has no objection.
In view of the paucity of evidence in the record as to the nature of the historical use of the alleyway, we refer to the making of two leases, whose legal materiality, a matter for later discussion herein, is disputed by the parties. On June 21, 1919 the Parker heirs demised the 10-foot segment (90 feet in length) of the alleyway to the Franklin Motor Car Company for a term of 10 years, at an annual rental of $1,000, for use as a right of way from Fulton Street by the lessee and anyone coming to transact business with it at its place of business on Broad Street. The lease included the right to pave the alley and erect a gate thereto. The lessors reserved the right to permit the use of the alley as a way for their tenants. It was stipulated that if the owners of parcel 4 desired to use the right of way this would be allowed subject to fixation of terms by the lessee. As Franklin Motor Car Company did not acquire title to parcel 5 until 1921, it would appear that it was conducting its business on that property as a lessee of the then owners when the alley lease was made. It is therefore inferable from the making of the lease that neither the former owners, the lessee Franklin Motor Car Company nor the Parker heirs regarded the right of way now claimed as still appurtenant to either parcel 5 or parcel 4, as they were then improved and used, under the original Parker-Howell and Parker-Ward deeds.
On June 15, 1926 the Parker heirs entered into an agreement with Franklin Holding Corporation for a lease of the entire alleyway to its full length of 190 feet, for a term of 10 years, for a rental of $1,000 per annum plus payment of the increase over 1925 realty taxes, to be used as a right of way by any occupant of premises Nos. 558-560 Broad Street (parcel 5) or persons coming to transact business with it. All other terms of the 1919 lease were repeated, and it was recited that that lease was to merge into and be superseded by the 1926 lease. Its execution was consented to in writing by Charles C. Willoughby, as successor to Franklin Motor Car Company's interest in the 1919 lease *548 through mesne assignment by the receiver of that company. It is particularly to be noted that Franklin Holding Corporation, the purported lessee in the 1926 lease, was not in fact owner of parcel 5 at the time but that its president, who executed the lease on its behalf, the same Charles C. Willoughby referred to above, was himself then the owner of the property by deed dated August 7, 1924. The participation in the lease transaction by Willoughby, even though as president of Franklin Motor Car Company, is thus clearly evidential of a belief in 1926 by the owner of parcel 5 that he had no right to the contemplated use of the alleyway without paying the Parker heirs for it.
It is of added significance that contemporaneously with the 1926 lease the Bonnell Motor Car Company, then owner of parcel 4, executed an agreement granting Franklin Holding Company "the right to drive over the premises in the rear of the property" owned by Bonnell for 10 years "in consideration of the privilege to use the right-of-way of ten (10) feet wide by ninety (90) feet long" as set forth in the lease from the Parkers to Franklin Holding Company. This shows that the then owner of parcel 4 did not regard itself as entitled to use the first 90 feet of the alleyway without special permission. Presumably Bonnell Motor Car Company, Franklin Motor Car Company and other tenants of Franklin Holding Corp. and of Willoughby used the alley under these leases for sundry business purposes at various times between 1919 and 1936.
The complaint in this cause was brought by Leasehold, alone, as plaintiff, joining as defendants not only Fulbro and G. & P. Parking Corp., but also the owners and incumbrancers of all the other parcels here involved. The demand was for judgment of injunction and declaration of the rights of all persons whose lands adjoin the alleyway in respect to the use thereof. Defendants Sidney and Violet Franklin, by their answer, admitted the allegations in the complaint, and, by counterclaim against the Fulbro interests, sought the same rights in the alleyway as did plaintiff. Fulbro, as well as the Parker heirs, as incumbrancers, by separate answers, *549 denied the rights asserted by Leasehold and the Franklins, and Fulbro, by counterclaim, demanded judgment of injunction against the plaintiff's using parcel 3 and declaring that plaintiff's rights in the alley were abandoned by reason of non-compliance with the easement limitations.
There is no present need to refer to the pretrial order beyond indicating (1) that the easement claimants asserted no claim to fee title in the alleyway but only "a right of way to pass over the alleyway for ingress and egress to and from the rear of their lands, on foot and by vehicle, including automobiles and similar modern means of conveyance," and (2) that the position of Fulbro was, essentially, that the rights of way granted the claimants were fixed by the original deeds which limited the way to use exclusively by horses, carriages and otherwise for the purpose of ingress and egress to and from barns and stables standing, or to be erected, upon the rear of claimants' properties, in connection with a use of the properties for dwelling purposes; that the erection of buildings to the easterly boundary lines of claimants' properties and the use thereof exclusively for business purposes works abandonment of the easements and that claimants' "predecessors" recognized this fact by the lease transactions mentioned above. The case was submitted for determination on a stipulation of facts, the substance of which has been already recited.
The trial court filed an opinion making findings and determinations which may be summarized as follows. The easement in the deed to Trippe (parcel 2) was unrestricted, and the reservation by Parker of the right of use of the alley by himself and his heirs and assigns in common with Trippe was operative to transfer unrestricted rights of ingress and egress to and from the alley to Parker's grantees of parcels 4 and 5. The grants of alley rights in the deeds to Trippe, Ward and Howell were found to contain interrelated recitals and to be required to be taken together, not "as separate or independent things." The references in the grants to Ward and Howell, "ingress and egress," "barns and stables" and "by horses, carriages and otherwise," were found not to *550 affect the easements as an "unrestricted right of passageway," available in connection with business uses of the dominant tracts. The leases mentioned above were held "not binding" against the present parties because not executed in the name of any contemporaneous owner of the dominant tracts and not recorded. Abandonment was found not established. Accordant findings of claimants' interests in the alleyway were made.
The judgment of the trial court, besides implementing the findings and determinations stated, declared that Fulbro might grant additional rights of way in parcel 3 to abutting owners to the north and east, but it failed to restrict such grants to residential occupiers, although such a proviso was set forth in the opinion. From that aspect of the judgment plaintiff cross-appeals, as well as from one other feature which requires no comment. Fulbro appeals from the judgment generally.

I.
The principal issue posed by this appeal is the nature and extent of the estates of easement in parcel 3 vested in Howell and Ward by the original deeds from Cortlandt Parker and transferred through mesne conveyances and recitals therein of transfer of the easement rights to the plaintiff and the defendants Franklin. It may conduce to understanding of our conclusions if, at the outset, it is noted that no issues have been presented, tried or argued involving such equities as laches, estoppel, waiver or acquiescence, or any rights growing out of prescription or adverse possession. Ward and Howell were each granted a legal estate of easement of way in parcel 3, and the inquiry is simply whether those estates, as a matter of construction of the instruments of grant, extend to such uses as the present owners have been and are now prevented by defendants from making of the parcel, in the light of the existing physical improvement of parcels 4 and 5 and the nature of the use thereof; and whether, in such light, the easements have been abandoned. *551 There is also the question as to whether the trial court was right in its view that claimants' easement rights may be founded upon the reservations by Parker in his deed to Trippe.
An easement of way is essentially and inherently a legal interest in land, 2 Thompson on Real Property (1939), § 456, p. 3; Walter v. Danisch, 133 N.J. Eq. 127, 131 (E. & A. 1943), as distinguished from a restriction resulting from a restrictive covenant, which is but a creature of equity arising out of contract, Welitoff v. Kohl, 105 N.J. Eq. 181, 185 (E. & A. 1929); Freedman v. Lieberman, 2 N.J. Super. 537, 547 (Ch. Div. 1949). An easement can be created either by grant, as in the case before us, or by reservation unto the grantor in lands conveyed, as in Man v. Vockroth, 94 N.J. Eq. 511 (E. & A. 1923); 2 Thompson, ubi. cit., supra. Of most significance for present purposes is the distinction between general grants of easements of way and limited grants, as where the limitation is with reference to the purposes for which the easement may be used. 2 Thompson, op. cit., supra, § 572, p. 174 et seq.; United States Pipe Line Co. v. Delaware L. & W.R.R. Co., 62 N.J.L. 254, 275 (E. & A. 1898). The grantee takes subject to any restriction imposed, ibid. Where no limitation is placed on the extent of the use of an easement of way, it is available as a general way for all purposes to which the dominant tract might be devoted, National Silk Dyeing Co. v. Grobart, 117 N.J. Eq. 156, 165, 166 (Ch. 1934); 23 William St. Corp. v. Berger, 10 N.J. Super. 216 (Ch. Div. 1950). But where there is an express limitation in the grant or reservation of the use to or purpose for which a way is to be put it will be enforced notwithstanding it becomes necessary or convenient for use for other purposes of the dominant landowner not existing or contemplated when the easement is created. Man v. Vockroth, supra (94 N.J. Eq. at pages 518, 519); Allen v. Gomme, 11 A.D. & E. 759, 113 Eng. Rep. 602 (1840); Norris v. Hoffman, 133 App. Div. 596, 118 N.Y.S. 156 (App. Div. 1909), affirmed 197 N.Y. 578, 91 N.E. 1118 (Ct. App. *552 1910); Wilson v. Ford, 148 App. Div. 307, 133 N.Y.S. 33 (App Div. 1911), reversed on other grounds, 209 N.Y. 186, 102 N.E. 614 (Ct. App. 1913); cf. Theriot v. Consolidated Companies, 160 La. 459, 107 So. 305 (Sup. Ct. 1926); Bangs v. Parker, 71 Me. 458 (Sup. Jud. Ct. 1881).
The core of this case is the question as to whether the estates of easements of way granted by Parker to Howell and Ward were limited or general. Indeed, the scope of the use apparently claimed by the claimants (a term we are using for both plaintiff and the Franklins) and allowed by the trial court includes not merely vehicular ingress into and egress from the confines of the respective lands of the claimants for any use or purpose to which the property may be put (the normal scope of a general easement of way for ingress and egress), but also the right to approach the lot lines of claimants' properties by vehicle and leave either commercial or passenger vehicles parked on parcel 3 while loading or unloading or while the driver or his passengers conduct business in the buildings on parcels 4 or 5. The latter types of use are the only vehicular uses of the easement presently possible insofar as parcel 4 is concerned, since it is impossible to penetrate the close because the building goes to the easterly lot line. Such uses are probably the only likely vehicular uses of the easement in connection with parcel 5, too, as the building on that lot also extends to the lot line. The record is bare of any information that vehicles are customarily (or ever) driven into the building on that lot through the double doors in the rear in the course of the business conducted on that property (retail furniture). We strongly doubt such a practice to be the fact. The only intimation in that regard afforded the court was the statement by counsel for plaintiff at the argument that trucks can be driven into the building through the rear doors. For purposes of the determination of this appeal, however, we assume that vehicles can be and are sometimes driven into the building in connection with the business conducted there, but that this is not the main or characteristic use of the easement by the plaintiff. Moreover, there *553 is no basis whatever for any factual assumption that vehicles are garaged in the building when not in use. For purposes of the present phase of the discussion of the legal status of the easements, however, we assume a use of the easement for general vehicular commercial operations on parcels 4 and 5.
Concededly, in case of ambiguity, a grant of easement is to be construed most strongly against the grantor, Crane v. McMurtrie, 77 N.J. Eq. 545 (E. & A. 1910); Walter v. Danisch, supra (133 N.J. Eq. at page 130). That rule, however, is only an aid to construction, and the primary guide is the enjoinder that the instrument granting a right of way must be read as a whole and so construed as to carry out the evident intent of the parties, ibid.; Lidgerwood Estates, Inc. v. Public Service, etc., Co., 113 N.J. Eq. 403, 408 (Ch. 1933); Hyland v. Fonda, 44 N.J. Super. 180, 187 (App. Div. 1957); 6 Thompson, op. cit., supra (§ 3486, pp. 720, 721). In the Hyland case, moreover, we said that "when there is any ambiguity or uncertainty about an easement grant, the surrounding circumstances, including the physical conditions and character of the servient tenement, and the requirements of the grantee, play a significant role in the determination of the controlling intent," ubi cit., supra. "[T]he servient tenement will not be burdened to a greater extent than was contemplated or intended at the time of the creation of the easement." Lidgerwood Estates, Inc., v. Public Service, etc., Co., supra (113 N.J. Eq. at page 407).
The application of the stated principles of construction was found by the trial court, and is argued by claimants, to be critically affected by the fact that the first grant of easement rights in the alley, that from Parker to Trippe, was unrestricted. In effect, it is argued that that aspect of the Trippe grant determinatively colors the nature of those involved in the present litigation, by analogy with the principle of construction of documents in pari materia. Preliminarily, it is noteworthy that the alley rights given Trippe extend only to the first 90 feet of the alley. We should receive claimants' contention more indulgently if *554 the Ward and Howell grants were less plainly circumscribed than on their face they are, or the surrounding circumstances less confirmatory of the clear purport of the language employed. Claimants' rights flow not from the Trippe grant (we consider hereinafter the independent contention that they accrue from Parker's reservations in the Trippe deed), but from the deeds to their respective predecessors in title, Howell and Ward. Neither of the latter grants general rights of easement for ingress and egress to and from the lands conveyed, but only, in the Howell deed, "a right of way * * * with horses carriages and otherwise for the purpose of ingress and egress to and from barns and stables standing or to be erected upon the rear of said lot and unto the rear of said lot until they shall be erected over and through said alley * * *," and, in the Ward deed, a right couched in substantially similar verbiage. As noted above, there already was a barn or stable on parcel 5 when Howell took; and the erection of such a structure on parcel 4 was plainly contemplated when Parker sold to Ward. There cannot be any semblance of a reasonable doubt as to what the intent of the parties was, taken against the factual background outlined above, which is drawn in good measure from muniments of title in the record before us. This was a high-grade residential neighborhood. Prominent citizen Cortlandt Parker himself resided in a stone mansion on parcel 1. The neighboring attractive residential outlook on Broad Street proper was to be preserved not only by uniform set-back building lines, but also by providing for access to shelter for equipages of residents of the adjoining parcels by private way from Fulton Street to the rear of the Broad Street lots, where barns and stables would house the animals and conveyances used in backyard privacy. Many still remember such arrangements as a commonplace of gracious living in the pre-automobile era. We can take judicial notice of what is so commonly known.
We are in agreement with the trial court that there would be no conflict with the essential original intent in adapting the easement user to the present-day functional succession *555 by automobile and garage, respectively, of the former horse and carriage, and barn or stable. Diocese of Trenton v. Toman, 74 N.J. Eq. 702, 711 (Ch. 1908); Hodgkins v. Bianchini, 323 Mass. 169, 80 N.E.2d 464 (Sup. Jud. Ct. 1948); Attorney-General v. Hodgson [1922], 2 Ch. 429. But that is not an issue here. The pertinent inquiry is whether the easement language can be reasonably understood to reflect an intent that the alley should ever be used primarily as a truck-loading area for businesses on the dominant tracts or for the parking of cars for people in attendance at such places of business. The authorities dealing with comparable grants are persuasively to the contrary.
Man v. Vockroth, supra, is a strongly compelling precedent. There the adverse parties were owners of adjoining lands, deriving their titles from a common grantor. At the time of the conveyance to plaintiff, the owner reserved a right of way "over said private road through the second tract to and from the dwelling-house now or late of said William Man, for use by the owner or owners of said house * * *" (94 N.J. Eq. at page 512). Defendant succeeded to the title to the house mentioned and used it as a boarding house and the road was used by his tenants, boarders and tradesmen. The continued use of the property for such purposes was enjoined by the court. The language of the reservation was found unambiguously to express the intent that the right of way be used "to and from  not the lands remaining to the grantor, but a particular portion thereof  the particular dwelling house of William Man thereon erected." (94 N.J. Eq. at page 518.) It was held that the right was "limited and not general." The court said, "The right is not to and from the lands generally, the reservation does not say `to and from lands remaining to the heirs and devisees of William Man,' but `to and from the dwelling house' of William Man, and `for use by the owner or owners of said (i.e., dwelling) house'" (emphasis by the court).
Claimants seek to distinguish the Man case on the basis that there a reservation, which is required to be construed strictly against the grantor, was involved, rather than an *556 easement by grant, which is to be construed in favor of the grantee where ambiguous. Giving due weight to the contrasting rules of construction, the decision still remains a cogent authority in a closely parallel case. It is also stressed by claimants that the language in the Man reservation was "to and from the dwelling-house," etc. But that raises no difference in principle from the present case. In both cases the language used refuted the idea of a general easement of ingress and egress and was imperative of an intent for a limited easement. Nothing less than a general easement of ingress and egress, and perhaps not even that, could avail claimants on the present facts.
The same basic philosophy of construction as in the Man case is to be found in such closely comparable situations as Allen v. Gomme; Norris v. Hoffman; Wilson v. Ford; and Bangs v. Parker, all supra. Compare such cases as Penn Bowling Recreation Center v. Hot Shoppes, 86 U.S. App. D.C. 58, 179 F.2d 64, 16 A.L.R.2d 602 (D.C. Cir. 1949); Sachs v. Toquet, 121 Conn. 60, 183 A. 22, 103 A.L.R. 677 (Sup. Ct. Err. 1936); Di Carlo v. Petrillo, 387 Pa. 212, 127 A.2d 657 (Sup. Ct. 1956); Western Auto Supply Co. v. Kominz Tire Co., 48 N.Y.S.2d 256 (Sup. Ct. 1944); The Tyler Co. v. Hansen, 20 N.J. Super. 309 (App. Div. 1952); Watson v. Heger, 48 Cal. App.2d 417, 120 P.2d 153 (D. Ct. App. 1942).
In Wilson v. Ford, supra, the following language of an 1864 agreement between tenants in common concerning the use of an alleyway abutting residential lots in Manhattan  "as a passageway * * * either on foot or with horses, carriages, or otherwise, to and from their respective lots aforesaid, and to and from the stables built and to be built for private use on their said respective lots"  was held in 1911 not to authorize use for vehicular access to a business building which had replaced a residence on one of the dominant lots. The court said (133 N.Y.S. at page 40):
"A mere reading of this language carries the conviction that the parties did not thereby intend to create a way to their lots without limitation as to its use. It is not difficult to describe an unlimited *557 easement. A mere statement that a way is `for ingress and egress' * * * or for `the purpose of passing and repassing' * * * aptly describes an easement of way without restriction. When, therefore, the parties go further, and attempt to set out the particular uses to which a way may be put, this fact in itself imports that some limitation is intended."
It was noted above that in the deed from Parker to Howell, Parker agreed not to convey any right of way in the alley to others "except for the purpose of being used for ingress and egress to and from a barn or stable to be erected on the rear of premises occupied by said person as his dwelling house" (emphasis added). True, the reference to a dwelling house is not contained in the grant of easement to Howell, nor is such a covenant included in the Ward deed. Nevertheless, the proviso is an illuminating element of the background circumstances surrounding both easement grants. The express reference to dwelling houses, in defining the general category of future grantees of alley rights-of-way contemplated by the covenant, is cogent evidence of identical intent with respect to the primary use of the properties of Howell and Ward to be serviced by the here litigated appurtenant easements. Were this not the intent, the express limitation of Parker's right to grant easements of way to others would be purposeless. Taken together with the agreements of Parker, Ward and Howell that the alley frontages of all of their parcels should be used "exclusively for barns or stables," and free of any nuisance, an intention for mutually reciprocal undertakings to preserve the alley from non-residential access from any direction, although not meticulously articulated in all relevant instruments of interest, is perfectly evident.
We are thus led to the conclusion, and we hold, that the easement grants we are here concerned with were not intended and are not to be construed to convey a general right of way over the alley for any purpose or use to which the dominant properties might ever be devoted in the future, but only to permit a means of ingress and egress via Fulton Street to and from structures on the rear of the premises *558 where private conveyances (and, in those days, the necessary animals) might be kept and maintained when not in use; and, until such structures were erected, to and from the rear portion of the lands conveyed for such temporary accommodation of such facilities as might be convenient under the circumstances. And all this was unmistakably to be in connection only with a residential use of parcels 4 and 5.
We are not implying that, coincident with the principal use, these easements might not also be used for incidental access by foot or vehicle to other parts of the properties conveyed, provided, in the case of equipages, they entered the close of the particular lot on the way in and started from within the close on the way out. Were this an otherwise unrestricted easement of ingress and egress, moreover, it appears that such incidental use might even include temporary parking of the equipages on the locus of the servient tenement itself and not require entry of the close, provided, of course, that such parking did not unreasonably obstruct or delay another's lawful use of the easement strip. See Sachs v. Toquet, supra; Western Auto Supply Co. v. Kominz Tire Co., supra; Annotation, 37 A.L.R.2d 944 (1954); but see Penn Bowling Recreation Center v. Hot Shoppes, supra (raising, but not deciding, the precise issue); cf. The Tyler Co. v. Hansen, supra. But there is no occasion to determine the permissible extent of incidental use on the factual showing before us since the principal intended use does not here exist. Cf. Grafton v. Moir, 130 N.Y. 465, 29 N.E. 974, 976 (Ct. App. 1892). Except for the apartment on the second floor of parcel 4, the uses of both parcels are entirely commercial. Moreover, no vehicles ever even penetrate the close of parcel 4, and, if any do as to parcel 5, it is not for storage or maintenance thereof when not in use. Even were the present easements considered general easements of ingress to and egress from the dominant tracts, we think it doubtful that they would support, as a principal use, the parking of vehicles on the easement locus. The principal *559 intended user not existing, moreover, there is no present incidental right of easement of passage by foot. See Davies v. Stephens, 7 C. & P. 570, 173 Eng. Rep. 251 (1836).

II.
One of the bases for the determination of the trial court was the reasoning that:
"The easement grant to Trippe is unrestricted. It grants the `right-of-way' and free use `for ingress and egress' and, according to the deed is intended for the use in common by Parker and `his heirs and assigns,' and by Trippe and his successors in title. Parker had an equal unrestricted right in the alley, and this, I adjudge, passed to Ward and Howell as his assignees when he, Parker, conveyed away Parcels 4 and 5. This conclusion has, in my opinion, added support in the principles enunciated in Diocese of Trenton v. Toman (infra) from which it is to be taken ([74 N.J. Eq. at] p[age] 710) that if a lot to which a right of way appurtenant is attached be subdivided, each subdivision is entitled to all legitimate rights by way of easement which appertained to the entirety of the original lot."
A number of reasons preclude our concurrence in that exegesis. The reference in the Trippe deed to "an alley intended to be used in common by the party of the first part [Parker] his heirs and assigns and the party of the second part," etc., is merely a part of the descriptive identification of one of the boundaries of the tract conveyed by the deed, not a reservation or definitive declaration of Parker's rights or those of any later grantee of his in the alley. The only arguable substantive effect of the recital, and even this would be surplusage, was to negative any exclusiveness of Trippe's rights in the alley. It is elementary that Parker retained the full fee in the alley, and the right himself to use or grant rights to others to use it, subject only to Trippe's right to be free from obstruction in his own reasonable use of the alley for ingress and egress. 17A Am. Jur., Easements (1957), § 121, p. 730; The Tyler Co. v. Hansen, supra (20 N.J. Super. at page 312). Parker needed no recitals in his deed or grant of easement to Trippe (which *560 was non-exclusive) to preserve such rights. Nor was he undertaking by anything contained in the Trippe deed to tie his hands as to the nature of any rights he would grant in the alley to purchasers of his Broad Street frontage, then yet unparcelled.
Since an owner cannot have an easement in his own land, see Niestat v. Equitable Security Co., 6 N.J. Super. 148, 152 (App. Div. 1950); Worthen & Aldrich v. White Spring Paper Co., 74 N.J. Eq. 647, 657 (Ch. 1908), affirmed 75 N.J. Eq. 624 (E. & A. 1909); 2 American Law of Property (1952), § 8.88, p. 298, Parker had no easement in the alley after the conveyance and grant to Trippe. He did have full fee title, subject to Trippe's easement. He was not disabled, as against his subsequent grantees in fee, from conditioning in such manner as he chose any right of way in the alley he might grant them as appurtenant to the lots they purchased from him. Diocese of Trenton v. Toman, supra, cited by the trial court in this connection, is not to the contrary. That case held, inter alia, that an easement appurtenant to a lot would extend to all portions of the lot after subdivision thereof. The inapplicability of the decision to the present case rests in the fact that Parker's rights in parcel 3 subsequent as well as prior to the conveyance to Trippe were grounded in fee title, not in easement.
Claimants take under the titles deriving from Howell and Ward, not Trippe. It results that nothing in Parker's transaction with Trippe derogated from the application of the ordinary rule that claimants' rights as successors in interest to Howell and Ward are circumscribed by such limitations in the easement estates as are to be found in the original grants to those holders. 2 Thompson, op. cit., supra, § 580, p. 187.

III.
There was considerable dispute before the trial court as well as in the appellate briefs as to the materiality or competence *561 of the 1919 and 1926 leases mentioned above. To the extent that they cast light on the probable nature of the use of the alley from 1919 to some time after 1926, they are of interest, but of no legal materiality in view of the basis for our conclusions. They were offered primarily as evidence of practical recognition of the absence of easement rights by predecessors in title at a time soon after the construction on parcels 4 and 5 of structures which rendered impossible any further compliance with the stated conditions for use of the grants. In view of the then proprietorship by Willoughby of parcel 5 and by Bonnell Motor Car Company of parcel 4, the 1926 lease and supplementary agreement were evidential as implied admissions by predecessors in title. National Silk Dyeing Co. v. Grobart, supra (117 N.J. Eq. at page 160); cf. A.J. & J.O. Pilar Inc. v. Lister Corp., 22 N.J. 75, 81 (1956). The offer of these leases in evidence did not purport to constitute a showing of instruments creating interests in the land having priority over those of claimants herein, and therefore the fact that they were not recorded is immaterial to their competency. The question is, however, academic, as our determination of the issues herein in no way depends upon these leases.

IV.
We should mention one other phase of the appeal as respects the scope of the issues litigated in reference to the easements. Some time after argument of the appeal it became apparent to the court that since the building owned by Leasehold stands on a 50-foot tract inclusive, as noted above, not only of the original parcel 5 but also of an adjoining 20-foot tract purchased by Howell from Jones to which the Parker-Howell easement in parcel 3 never extended, there seemed to be implicated the additional legal objection to use of the easement by Leasehold that an easement may not be extended to serve more land than the dominant premises. Diocese of Trenton v. Toman, supra (74 N.J. Eq. at page 709); National Silk Dyeing Co. v. *562 Grobart, supra (117 N.J. Eq. at page 167). The point had not been noticed either below or on appeal by any party. Counsel were requested to file supplemental memoranda relating to this point. Claimants then objected to a determination of the case on the stated basis because the issue had not been raised by defendants in the trial court, and they also raised issues of adverse possession and prescriptive rights in respect to the 20-foot strip which had not been tried or considered either factually or legally at trial, or argued upon appeal. Claimants also, alternatively, demanded that if the new issue were to be entertained they should be allowed to withdraw their concession, by trial stipulation, that title to parcel 3 was in Parker and his successors.
We have concluded that the rationale for our determination as to the meritorious questions eliminates any need for deciding the additional issue we raised or for consequential consideration of the points contingent thereupon posed by claimants. The appeal will be disposed of on the record and arguments originally submitted by the parties.
Claimants have also in their memorandum on the newly raised issues suggested that a public announcement since the argument of the sale of parcels 1 and 2 by Fulbro and the impending construction of a large office building thereon require the addition of the purchaser as a party defendant. We cannot at this time deal with so informal an application to add parties, if that is the intent of the suggestion.

V.
We have, finally, in this branch of the appeal, to decide whether the litigated easements are merely in suspension until again exercisable in conformance with the grants, or whether they are abandoned. Our conclusion is that they have been abandoned.
Under our holding above that the easements are usable only in connection with such residential use of the premises (parcels 4 and 5) as might require garaging or *563 other maintenance of vehicles on the rear of those plots, it is obvious that uses of that kind became impossible when the present structures on those parcels were erected. If not then, surely by now, any prospect of such use in the future, particularly in view of the present nature of the area and its surroundings, is so negligible as not reasonably to warrant its theoretical preservation by an adjudication of mere suspension. Abandonment of an easement will be declared when there is action by the dominant tenant respecting the use authorized which indicates an intention never to make the use again. 2 American Law of Property, op. cit., supra (at § 8.97, p. 303). The same authority gives as a "typical illustration" of such intention "the building by the owner of a dominant tenement, which has an easement of way appurtenant to it, of a permanent building so located as to make the use of the way impossible." As we have held that the present easements not only contemplated residential use of the dominant tracts but also vehicular penetration of the close as the characteristic or principal easement use, it is clear that the authority cited is pertinent to the present case.
We are cognizant of the holding in Fairclough v. Baumgartner, 8 N.J. 187 (1951), that "mere non-user of an easement will not suffice to destroy the right" and that what is required to establish abandonment is "clear and convincing evidence of an intention on the part of the owner to abandon the easement" (8 N.J. at page 189). We think that the construction of a permanent business building occupying the entirety of a lot, where the easement, correctly construed, requires entry from the easement locus onto the dominant tract and residential use of the tract, taken together with the maintenance and use of such a building for about 40 years with the prospect of indefinite continuance thereof in the future, presents clear and convincing evidence of an intent to abandon the easement, and we so hold as to the easements before us. Cf. National Silk Dyeing Co. v. Grobart, supra (117 N.J. Eq. at pages 166, 167).

*564 VI.
In connection with the request for declaration of Fulbro's rights in the alleyway, the trial court, as already noted, entered judgment that it might grant "additional rights of way" therein "for abutting owners to the north and east thereof." This was not qualified by the condition in the covenant of the Parker-Howell deed that the premises to be served by such rights of way be occupied as dwellings, although the opinion of the trial court did so stipulate. For this reason Leasehold cross-appeals from that aspect of the judgment.
In the cross-appeal we have an entirely different kind of problem from that implicated in the construction of the easements. That matter involved the construction of the grant of a legal estate, not susceptible of judicial enlargement merely because the changed character of the area no longer permitted adherence to the originally stipulated use conditions. The restriction now under examination, however, is not a conveyance of an estate or interest in property, but comes under the classification of restrictive covenants as to the use of land. As such it is a contract, Weinstein v. Swartz, 3 N.J. 80 (1949), enforceable by action for damages if breached, see Welitoff v. Kohl, supra (105 N.J. Eq. at pages 187, 189), but not specifically in equity where the benefit designed to flow therefrom is no longer a reality because of changed conditions, ibid., at pp. 186, 187; Page v. Murray, 46 N.J. Eq. 325 (Ch. 1890); Scull v. Eilenberg, 94 N.J. Eq. 759 (E. & A. 1923); Annotation, 4 A.L.R.2d 1111 (1949); 2 American Law of Property, op. cit., supra, § 9.39, p. 444. The cited authorities indicate that the rule as to changed conditions is not confined, as Leasehold argues, to cases where the restrictive covenant is part of a neighborhood scheme. The decisive consideration is the inequity of enforcing a restriction which can no longer do the land intended to be benefited thereby any good.
Leasehold's appeal on this branch of the case amounts to little more than the merely colorable, but essentially superficial, *565 plaint that if its easement is terminated because its property is no longer residential, it would be inequitable to relax the covenant as to further grants of alley rights simply because of the same changed character of the neighborhood. It should not be necessary to reiterate the already stressed distinction between rules concerning enforcement of limitations in grants of estates in property and as to contractual covenants for use restrictions. Welitoff v. Kohl, supra (105 N.J. Eq. at page 185); Freedman v. Lieberman, supra (2 N.J. Super. at page 547). The court cannot give one man's property to another on different terms from those fixed by the owner. It can, however, refuse to compel adherence to a restriction undertaken as to the use of one's property which no longer is of the contemplated benefit to the covenantee.
This aspect of the judgment is unassailable.
From all of the foregoing, it results that so much of the judgment as adjudicates the easement rights of the claimants, qualifies the rights of Fulbro on the basis thereof, and provides for concordant restraints, is reversed; in all other respects the judgment is affirmed. The cause is remanded for entry of judgment consistent with this opinion. Costs to defendants Fulbro Holding Company and G. & P. Parking Corp., as against plaintiff and defendants Sidney A. Franklin and Violet Franklin.